SAMUEL DINSMAN, PLAINTIFF IN ERROR, *v.* CHARLES WILKES.

Under the Act of Congress, passed on the 2d of March, 1837, (5 Stat. at Large 153,) the commander of a squadron had power to detain a marine after the term of his enlistment expired, if, in the opinion of the commander, public interest required it. See 7 Howard, 89.

The decision of this question, by the commander, was final and conclusive; and if the marine did not conform to it, he was liable to punishment.

So, too, the commander was the judge of the degree of punishment necessary to suppress a spirit of disobedience and insubordination; and he is not liable to an action for a mere error in judgment, even if the jury suppose that milder measures would have accomplished his object.

But at the same time he is bound never to inflict any severer punishment than he conscientiously believes to be necessary to maintain discipline, and due subordination in his ships.

The question being one of motives, the jury are to judge whether he was actuated alone by an upright intention to maintain the discipline of his command, or whether punishment was in any manner or degree increased or aggravated by malice or vindictive feeling.

In deciding this question, the jury are to take into consideration all the circumstances of the case.

A letter from one of the officers of the squadron to the commander, upon the temper and disposition of the marines in one of the ships, was proper evidence for the jury.

But the proceedings of a court-martial, for the trial of men for offences committed long before, was not evidence, because it did not show the spirit existing at that time.

Nor was evidence admissible, of the flogging of two other persons merely by the authority of the commander without a court-martial.

Nor was evidence admissible, that the commander refused to give to the marine, a certificate, under the act of Congress before referred to; because the commander claimed to hold him by voluntary enlistment.

In order to show the motive by which the commander was actuated in confining the marine in a fort, on shore, it was admissible for the commander to offer evidence that merchant seamen from American ships were confined there, and also for the marine to offer evidence to rebut it.

THIS case was brought up by writ of error, from the Circuit Court of the United States, for the District of Columbia, holden in and for the county of Washington.

It was the same case which is reported in 7 Howard, 89. It was then Wilkes *v.* Dinsman, and this court, having reversed the judgment of the Circuit Court, sent it down to be tried again. Upon such new trial, the verdict was for Wilkes, and Dinsman brought it up again upon the exceptions to the rulings of the court.

The statement of the evidence offered by the plaintiff in the Circuit Court was the same, in substance, with that set forth in 7 Howard, and need not be now repeated. The exceptions taken at the trial were the following:

" On the further trial of this cause, and after the foregoing evidence was given on the part of the plaintiff, and which is made part hereof, the defendant, for the purpose of showing probable cause and the absence of malice, on his part offered to read in

evidence the following paper marked A; (letter of Lieut. Emmons,)* having first proved that the same was in the handwriting of Mr. Emmons, who was a lieutenant of said ship, and that the other signatures are genuine; which said paper being in the possession of the defendant, as an official paper, was produced on the trial by the defendant; to the admissibility of which said letter, the plaintiff, by his counsel, objected; but the court overruled the objection, and admitted the same paper to be read in evidence, to which the plaintiff excepts, and this his exception is signed, sealed, and enrolled, this 30th day of November, 1849."

### Second Bill of Exceptions.

" On the further trial of this cause, and after the evidence contained in the plaintiff's aforegoing exception and statement of evidence, and which is made part hereof, the defendant produced to the court two original records of the trial of Riley and Ward, respectively, and proved the same to be the originals; and offered to read to the jury so much of the said records as contains the charges, specifications, and finding of the court-martial as relates to mutinous conduct as follows: †  In order to show the defendant had probable cause for, and to repel any presumption of malice arising from the fact of the imprisonment by the defendant of the plaintiff, as aforesaid, in the said fort.  To all which said evidence the plaintiff, by his counsel, objects; and the court overrules the objection, and admits the same; whereupon the plaintiff prays an exception thereto; and that the court may sign and seal this his bill of exceptions, and cause the same to be enrolled according to the statute. All which is done this 30th ι November, 1849."

### Third Bill of Exceptions.

" On the further trial of this case, and after the evidence contained in the aforegoing exceptions, made part hereof, and after the defendant had read to the jury Lieut. Emmons's letter, and so much of the records of the court-martial as stated in the aforegoing exception, the plaintiff to rebut the same, and for the purpose of showing the state of the discipline of the ship Peacock, at and about the time of committing the trespasses laid in

---

* Note by the reporter.  The letter of Lieut. Emmons was not in the record; but its object was to show the temper and disposition of the marines in one of the vessels of the squadron.

† The offences with which Ward and Riley were charged, were committed on the 29th September, 1839.

the declaration, offered to ask Lieut. Walker, the first lieutenant of said ship, what was the general conduct and character of Riley, Ward, and Lewis, aforesaid, for subordination and fidelity to duty, at the time of the holding of said court-martial, and prior thereto, and during the time embraced in charges against them as contained in the said letter of Lieut Emmons; but the defendant objected thereto, and the court refused to allow the said question and evidence to be put and admitted; to which refusal the plaintiff excepts, and this his exception is signed, sealed, and enrolled, this 30th day of November, 1849."

### Fourth Bill of Exceptions.

" On the further trial of this cause, and after the evidence contained in the aforegoing exceptions, and made part hereof, and after the defendant had given evidence of particular instances of insubordination and misconduct among the crew of the said ship Vincennes, from the time of her arrival at Oahu, to the time of the imprisonment of the plaintiff, in order to prove that the discipline of the same was relaxed and impaired; and after the defendant had closed his evidence in chief, the plaintiff, to rebut the same, offered to read from the log-book of said ship, at a date after her said arrival, to wit, " that on the 16th day of October, 1840, at the said island, a certain Leo Weaver and Henry Waltham, two of the crew of said ship, were flogged thereon, the first with sixteen lashes, and the last with eighteen lashes, for desertion, insolence, and neglect of duty; and that the same did not appear by said log-book to have been done by the sentence of a court-martial; but the court refused said offered evidence, and the plaintiff excepts thereto, and this his exception is signed and sealed this 30th November, 1849."

### Fifth Bill of Exceptions.

" Upon the further trial of this case, after the evidence contained in the aforegoing exceptions made part hereof had been given, and after the plaintiff and defendant had both closed their evidence in chief, and after the defendant had given evidence that he had, subsequent to the sailing of the said squadron, shown marks of favor to the plaintiff, and had promoted him to the rank of corporal, in order to repel any inferences of malice on his part towards the plaintiff; but the plaintiff offered evidence tending to prove that the defendant claimed his right to hold the plaintiff in the said squadron under and by virtue of an act of Congress, approved March 2, 1837, entitled "An act to provide for the enlistment of boys, &c." And further offered to prove

that the defendant had failed, and refused to certify, as required by said act, by reason whereof the plaintiff had been and was denied the benefit of the additional pay, as is by said act provided. And the plaintiff offered this evidence to rebut that of the defendant, and to show a continuing malice on his part towards the plaintiff; but the court refused the said offered evidence, and the plaintiff excepts, and this his exception is signed and sealed this 30th November, 1849."

### Sixth Bill of Exceptions.

" On the further trial of this case, and after the evidence contained in the aforegoing exceptions, made part hereof, and after the evidence in chief on both sides had been closed, and after the defendant had given evidence to prove that at the time the plaintiff was confined in said fort there were merchant seamen of the United States confined there, for the purpose thereby of inferring a knowledge by the defendant that said fort was a proper place for the imprisonment of the plaintiff:

" The plaintiff, by way of rebutting the same, offered evidence tending to prove that it was a general and uniform practice and custom in the naval service at the time aforesaid, and long before, as well established, to confine on the armed ships of the United States in any foreign port, any and all merchant seamen of the United States, who might there deserve such confinement by reason of their own ship or master not being able to confine them; which offered evidence the court refused, and the plaintiff excepts thereto, and this his exception sealed this 30th day of November, 1849."

### Seventh Bill of Exceptions.

" And thereupon the defendant, by his counsel, prayed the court to instruct the jury that,—

" If, from the whole evidence aforesaid, the jury shall find that the plaintiff, being an enlisted marine, signed the paper as aforesaid, marked A, (the same being the contract to serve during the cruise,) the court instructs the jury he was thereby bound to serve in the exploring expedition till the ships returned to the United States; and

" If they further find the defendant was the commander of that expedition, was lying with his squadron in the harbor of Honolulu, the ships were undergoing repairs, and refitting for the purpose of further prosecuting the objects of said expedition, and the commander and many of the officers on shore pursuing their investigations that the said discipline of said squadron was

thereby greatly relaxed, and the defendant received such inform-
ation as led him to believe, and he did believe, that the marines
on board the said squadron were unwilling to serve out the said
cruise, and would refuse to do duty, and require to be sent home
at the respective periods they might think their original terms
of enlistment expired ; and after four of the marines on board
the ship Vincennes, under the immediate command of defend-
ant, had in fact refused to do duty, on the ground that the
terms of their original enlistment had expired, the plaintiff in
like manner refused on like grounds ; then it was in the discre-
tion of the defendant to confine said plaintiff in said squadron,
or on said island, as he might deem best, for a few days, and
until the squadron was ready to sail ; and he is not responsible
for confining the plaintiff on the island, (if the jury shall find he
was confined there by the order of defendant,) notwithstanding
they shall be of opinion that he might have been confined in the
squadron.

"And if the jury shall further find that the plaintiff was con-
fined in the fort on the island, that said fort was the only public
place of imprisonment on the island, was used by the consuls
for the confinement of seamen, and by the authorities of the
island for persons criminally charged, and for seamen who had
deserted from the ships, and that seamen were shipped from said
fort into said squadron ; that the defendant refitted his ships,
and brought the plaintiff on board, and sailed with all reason-
able despatch ; then it is not competent for the jury to infer ma-
lice or corrupt motive in the defendant in so ordering the plain-
tiff to be sent to said fort, if he would not go to duty ; although
the jury may be of opinion that he might have been kept safely,
and with more comfort to said prisoner, on board said squadron ;
and in the absence of all proof that defendant gave any order as
to the mode of his confinement of said plaintiff, or for denying
him any comforts, or that he had any knowledge of the manner
of said imprisonment, or of his being deprived of comforts, or
of the circumstances of hardship stated in the evidence, it is not
competent for the jury to infer malice or corrupt motive in the
defendant, from the facts (if the jury shall find them so) that
plaintiff was confined, and lodged, and fed as stated in the plain-
tiff's evidence ; and without proof of malice the plaintiff is not
entitled to recover in this action. Which instruction the court
gave as prayed, and the plaintiff, by his counsel, excepts thereto,
and prays the court to sign and seal the same, and cause the
same to be enrolled according to the statute, which is done ac-
cordingly this 30th November, 1849."

### Eighth Bill of Exceptions.

" On the further trial of this cause, and after the evidence contained in the foregoing statement of evidence and exceptions made part hereof; and after the whole evidence had been closed, and after the court had instructed the jury according to the prayer-of the defendant as aforesaid, the plaintiff prayed the court to instruct the jury as follows:

" 1st. If the jury believe from the whole evidence that the plaintiff was put and kept in the said fort by order of the defendant, then, notwithstanding the defendant had a right to put and keep him there, yet the motive with which the same was done is a question for the jury; and if the jury believe that such motive was founded either on malice, cruelty, or any species of oppression, then the defendant is liable therefor, and the jury may give such damages as upon the whole evidence they think the plaintiff ought to have.

" 2d. If the jury believe from the whole evidence aforesaid that the defendant was captain of the ship Vincennes, and that the said ship was in a state of sufficient discipline, and the plaintiff could have been securely confined thereon, with safety to said ship, the officers, and crew, at the time he was sent to said fort, and during the time he was confined therein, then it was the duty of the defendant to know the same, and the jury may presume he did know the same; and it is competent for them to infer therefrom that the defendant acted maliciously toward the plaintiff in confining him in said fort. And if the jury believe he was confined in said fort by order of the defendant, they may give such damages therefor as upon the whole evidence they think the plaintiff ought to have.

" 3d. If the jury believe from the whole evidence that the plaintiff was imprisoned in the said fort by order of the defendant, and that the defendant acted therein from malice, cruelty, or any species of oppression, he is responsible therefor, and the jury may give such damages therefor as upon the whole evidence they think the plaintiff ought to have.

" 4th. If the jury believe from the whole evidence that the plaintiff was put and kept in the said fort by order of the defendant, and that the same was done through malice, or any species of oppression, then the defendant is liable therefor, and the jury may give such damages as they think the plaintiff ought to have; notwithstanding the jury may find that the defendant considered the said fort to be a more proper and safe place of confinement than the vessels of said squadron.

" 5th. If the jury believe, from the whole evidence, that the plaintiff was imprisoned in the said fort by order of the defendant,

and that the same was accompanied by malice on the part of the defendant, then the plaintiff is entitled to recover, and the jury may give such damages therefor as they think the plaintiff ought to have. Notwithstanding the jury may believe that, under all circumstances, the said imprisonment was considered by the defendant to be with more propriety and safety than in the squadron.

"6th. If the jury believe from the evidence that the plaintiff was put and kept in the said fort by order of the defendant, and are of opinion that there was no justifiable cause for the act; and are further of opinion, from the whole evidence, that the same was wantonly done by the defendant, with a wilful disregard of right or duty, and contrary to his own convictions of duty, as a mere exercise of power, without any sense of its being right, then it is competent for the jury to infer that the same was maliciously done; and if so done, the defendant is responsible, and the jury may give such damages therefor as, upon the whole evidence, they think the plaintiff ought to have.

"7th. If the jury believe from the evidence that the plaintiff was confined in the said fort by order of the defendant, when he could, without any difficulty, have been confined on the said ship, and that he knew he could have so confined him; and that the plaintiff was, in said fort, subjected to cruel and barbarous treatment, and the defendant could have prevented the same, and it was his duty to prevent the same, and he did not interfere so to do, then it was competent for the jury to infer malice therefrom in the conduct of the defendant, and he is responsible therefor; and the jury may give such damages as, upon the whole evidence, they may think the plaintiff ought to have.

"8th. If the jury believe from the evidence that the plaintiff was confined in the said fort by order of the defendant, in a small cell, with irons on his hands, arms, and legs, and, while so confined, was subjected to cruel, unusual, and barbarous treatment, which the defendant could have prevented, and which it was his duty to prevent, then it is competent for the jury to infer malice on the part of the defendant, and he is responsible therefor; and the plaintiff may recover in this action.

"Which said prayers, and every and each of the same, the court refused to grant; to which refusal the plaintiff, by his counsel, excepts, and this, his exception, signed, sealed, and enrolled, this 30th day of November, 1849."

### Ninth Bill of Exceptions.

"On the further trial of this cause the counsel for the plaintiff, in his summing up to the jury, having stated that the evidence,

and the only evidence, on which he relied to show the knowledge of the defendant of the severities alleged to have been practised on the plaintiff, by being imprisoned in the said fort, was, that the said ships, the Peacock and Vincennes, were in a good state of discipline, and the plaintiff might have been safely kept in one of them; that it was, by the rules and regulations of the navy, made the duty of the captain to look after the comfort of his men; that no articles of food or clothing were sent from said ship to said plaintiff while in said prison; that defendant and the sergeant of marines were on shore most of the time while the plaintiff was so imprisoned, and the facts and circumstances of said imprisonment itself, as stated in plaintiff's evidence; the defendant, by his counsel, prayed the court to instruct the jury that, from the said evidence, if the same is believed by the jury, it is not competent for them to find that defendant had knowledge of the severities said to have been practised on the said plaintiff in said prison, and without such knowledge the plaintiff is not entitled to recover in this action.

" Which instruction the court gave, and the plaintiff excepts thereto; and so excepting to the granting of the same, the plaintiff denies that the same sets forth the whole evidence on which he relied, as proving the malice of the defendant, or his knowledge of the treatment of the plaintiff during all his said imprisonment, and at the commencement, continuation, and end thereof; and he excepts to said instruction on said grounds, and all other grounds to which the same may be liable, and this, his exception, is signed, sealed, and enrolled, this 30th November, 1849."

## Tenth Bill of Exceptions.

" On the further trial of this case, and after the plaintiff's counsel had summed up to the jury, and the court had, after such summing up, granted the defendant's prayer, marked P, the plaintiff prayed the court further to instruct the jury as follows:

" That, from the whole evidence aforesaid, it is a matter of fact for the jury to find whether the said whipping of the plaintiff was immoderate, excessive, and malicious, on the part of the defendant, under all the circumstances.

" That, upon the whole evidence aforesaid, if believed, it is competent for the jury to find that the defendant did, unwarrantably and maliciously, imprison the plaintiff in the said prison or fort.

" That, upon the whole evidence aforesaid, if believed, it is competent for the jury to find that the defendant wilfully neglected the personal comfort and cleanliness of the plaintiff while imprisoned by his order in the said fort; and if the jury shall

find such wilful neglect, then the defendant is liable to this ac-
tion; provided the jury shall further find that, while so impri-
soned, the condition of the plaintiff was uncomfortable, wretched,
and filthy, and his food unwholesome and unpalatable.

" Upon the whole evidence aforesaid, if believed, it is compe-
tent for the jury to find that the imprisonment of the plaintiff
in said fort was unnecessary and unjustifiable by the exigencies
of the case; and that, in ordering said imprisonment, the de-
fendant was actuated by malice, and an unlawful desire of
punishing the plaintiff cruelly and immoderately.

" That from the whole evidence, if believed by the jury, it is
competent for them to find that the defendant wilfully neglected
to bestow proper attention to the health, comfort, and cleanliness
of the plaintiff while imprisoned in said fort; and such wilful
neglect, if found by the jury, amounted in law to express malice
on the part of the defendant.

" That it is competent for the jury, from the whole evidence
aforesaid, if believed by them, to find that the imprisonment of
the plaintiff, so stated in the evidence, in said fort, was longer
than the exigency of the case required; and if the same shall be
found by the jury, then the plaintiff is entitled to recover, pro-
vided the jury shall further find that the prolongation of such
imprisonment was the result of malice on the part of the de-
fendant towards the plaintiff.

" If the jury find, from the whole evidence, that the plaintiff
was placed in the said fort by order of the defendant, then the
defendant was bound to know the kind of treatment to which
the plaintiff was subjected by said imprisonment; and he can-
not be presumed ignorant thereof, especially if the jury find that,
during said imprisonment, the defendant neglected to make in-
quiry into the condition and treatment of the plaintiff.

" That, upon the whole evidence aforesaid, if believed by the
jury, they shall find that the defendant, in all the acts complained
of by the plaintiff, was actuated alone by an upright intention
to maintain the discipline of his command, and the interests of
the service on which he was engaged, then the plaintiff is not
entitled to recover; but if the jury shall find that said acts, or
any of them, proceeded from, or were aggravated by, cruelty,
malice, and oppression towards the plaintiff, then the plaintiff is
entitled to recover.

" Which instructions, and each and every of them, the court
refused to give; to which refusal the plaintiff excepts, and this,
his exception, is signed and sealed this 30th November, 1849."

### Eleventh Bill of Exceptions.

" Upon the further trial of this cause, the plaintiff prayed the court to instruct the jury that, upon the whole evidence aforesaid, if believed by the jury, it is competent for them to find a verdict for the plaintiff, and to assess such damages as they shall think, under the circumstances, the plaintiff is entitled to recover.

" Which instructions the court refused to grant; to which refusal the plaintiff excepts, and this, his exception, is signed, sealed, and enrolled, this 30th day of November, 1849."

Upon these exceptions the case came up to this court.

It was argued by *Mr. Addison* and *Mr. May* for the plaintiff in error, and by *Mr. Bradley* for the defendant in error.

The counsel for the plaintiff in error made the following points :

1. That there is evidence in this case of "malice and oppression" in the act of the plaintiff's imprisonment, both by direct and implied proofs. 2 Greenl. Ev. 453 ; 3 How. 267, 291, 292 ; 7 Id. 89 ; 4 Barn. & Cress. 255 ; 2 Starkie's Ev. (Metcalf's ed.) 904, 905 ; 3 Kent's Com. 181, 182, 183 ; 4 Serg. & Rawle, 423 ; 1 Wend. 140 ; 2 Starkie's Rep. 388, 389 ; Hueneford *v.* Horn, 2 Carr. & Payne ; 3 Bing. N. C. 950.

2. That even if the act of imprisonment was free of malice, yet there is evidence of "malice, cruelty, and oppression" in the mode and circumstances attending the said imprisonment. Wall *v.* Namara, quoted in 1 Term Rep. 536,.537 ; The Six Carpenters' Case, 1 Smith's Selection of Leading Cases, Amer. ed. and the cases there referred to ; Bradley *v.* Davis, 2 Shepley, 44 ; Malcolm *v.* Spoor, 12 Met. 280 ; Melville *v.* Brown, 15 Mass. 82 ; Jarratt *v.* Gwathmey, 5 Blackf. 239 ; Lambert *v.* Hodgson, 1 Bing. 317 ; Fabrigas *v.* Mostyn, 1 Cowp. 161 ; 1 Chitty's Pl. 539 ; Duncan *v.* Thwaite, 5 Dowl. & Ry. 462 ; King *v.* Root, 4 Wend. 137 ; Dexter *v.* Spear, 4 Mason, 118.

3. That on the evidence in the case the *quo animo* of the defendant was a question of fact for the jury. 4 Burrow, 1971 ; Parks *v.* Ross, 11 How. 362 ; Turner *v.* Walker, 3 Gill & Johns. 386 ; Scott *v.* Lloyd, 9 Pet. 418 ; Greenleaf *v.* Brith, 9 Pet. 292 ; Ches. & O. Canal Co. *v.* Knapp, 9 Pet. 541 ; Fergusson *v.* Tucker, 2 H. &. G. 183 ; Gray *v.* Crook, 12 G. & J. 236 ; White *v.* Nichols et al. 3 How. 266 ; Mitchell *v.* Jenkins, 5 Barn. & Adol. 593, 594 ; Ravenga *v.* Makintosh, 2 Barn. & Cress. 493 ; Taylor *v.* Willans, 2 Barn. & Ad. 845, 848 ; Venafra *v.* Johnson, 10 Bing. 301 ; Panton *v.* Williams, 2 Adol. & Ellis, 632 ; 42 Eng. Com. Law Rep. ; Turner *v.* Ambler, 10 Adol. & Ell. 252, 259 ; Abbott

on Ship. 179, note, 5th Am. ed. 236; United States *v*. Ruggles, 5 Mason, 192; Magee *v*. Ship Moss, Gilpin's Rep. 21; Relp *v*. The Maria, 1 Pet. Adm. Rep. 86, 174 note, 175 note; Gilpin's Rep. 32.

4. That the letter of Lieut. Emmons was not admissible in evidence. 1st exception.

5. That the records of the trials by court-martial of Riley and Ward were not admissible in evidence. 2d exception.

6. That the evidence of Lieut. Walker, of the character and conduct of Riley and Ward, to rebut the presumption sought to be raised by their conviction by court-martial, was admissible. 3d exception.

7. That the entries in the log-book of the punishment of Weaver with sixteen and Waltham with eighteen lashes, without the sentence of a court-martial, was admissible to rebut the proof offered on the part of the defendant, that the discipline of the squadron was relaxed. 4th exception.

8. That the evidence that the defendant claimed to hold the plaintiff under the act of Congress of 2d March, 1837, and that he refused to certify that he detained the plaintiff under said law, by reason whereof the plaintiff was deprived of the additional pay, provided for by said act, was evidence proper to be admitted to rebut the inference of absence of malice sought to be raised from marks of favor shown to the plaintiff by the defendant. 5th exception.

9. That the evidence that it was the custom and uniform practice to confine on the armed ships of the United States, in a foreign port, all merchant seamen of the United States, who might there deserve such confinement when they could not be confined on their own ship, was admissible to rebut the inference of a knowledge by the defendant, that the native fort was a proper place for the imprisonment of the plaintiff, sought to be established by the proof that merchant seamen were confined in said fort at the time the plaintiff was there imprisoned.

*Mr. Bradley*, for the defendant in error.

The substance of this case will be found in 7 How. 98. The evidence is varied only so far as relates to the evidence of a corrupt motive in the defendant in ordering the imprisonment complained of.

The facts are substantially embraced in the defendant's prayer granted by the court, forming plaintiff's 7th exception. This, taken in connection with the 9th and the 11th bills, will present the whole case to the court. They cannot well be abbreviated.

The first sets out those facts, which being found by the jury, constitute probable cause. It proceeds on the hypothesis that the defendant had reason to believe, and did believe, in the exist-

If he did so believe, a case arose for the exercise of his discretion. If in the exercise of that discretion he did no more than issue a conditional order, and the plaintiff would not comply with the condition, he is not responsible for the execution of that order, provided he directed no more than the ordinary and usual course of its execution, and was ignorant in fact of any excess in that execution.

That malice means wilful neglect, omission or commission. And unless knowledge was brought home to him of the omission of some inferior officer to discharge his duty, by which under the pretended execution of his order the plaintiff suffered, the defendant is not responsible.

The basis of the whole is a reasonable belief in the existence of a particular state of facts — a discretion to act under that belief, and a resort to ordinary means to execute that act.

The plaintiff, on the other hand, maintained, that if the case arose for the exercise of his discretion, he was bound to see to the execution of his order in detail, and was responsible for any injury which arose in the course of such execution; that is to say, if there was probable cause, malice alone was sufficient to enable him to recover.

And again: the plaintiff so framed his prayers as to submit the whole question of probable cause to the jury.

The defendant will rely on the case in 7 Howard, and on the cases cited by the plaintiff in error, and endeavor to show that there is no error in any one ruling, to which the plaintiff has excepted.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case was before the court on a former occasion, and is fully reported in 7 How. 89. The present defendant in error was then the plaintiff, and the judgment of the Circuit Court was reversed, and a *venire de novo* awarded, the new trial to be governed by the principles decided by this court. Upon the trial under the mandate the judgment was in favor of the present defendant, and the plaintiff thereupon brought this writ of error. The testimony, so far as the questions of law upon the merits are concerned, is substantially the same with that offered at the former trial.

The case, as it now comes before the court, is somewhat confused by the number of instructions asked for by the counsel for the different parties, and which are merely given or refused, without any explanatory instructions by the court itself. This mode of proceeding complicates the case and makes it difficult to understand, from the exceptions, what principle of law the Circuit Court intended to decide.

But it would seem, from the various instructions moved for by counsel and given or refused, that the court likened the case to a suit for a malicious prosecution, and supposed it was to be governed by the same principles.   And if the Circuit Court understood the opinion of this court to be placed on that ground, they were evidently mistaken.   For by referring to the report of the case, in page 130, it will be seen that the court said, in express terms, "that for acts beyond his jurisdiction, or attended with circumstances of excessive severity, arising from ill-will or a depraved disposition, or vindictive feeling, he can claim no exemption."

The case has no analogy to a suit for a malicious prosecution. That action will lie only in cases where a legal prosecution has been carried on without a probable cause.   Johnston v. Sutton, 1 D. & E. 524.   The action was originally applied to criminal proceedings; to cases where a party had maliciously, and without probable cause, procured the plaintiff to be indicted or arrested for an offence of which he was not guilty.   In cases of that kind, where the facts are admitted, or found by the jury, the court, and not the jury, decide whether there was probable cause or not for the prosecution; and if there was probable cause, an action for malicious prosecution will not lie, although the party who procured the arrest or indictment was actuated by malicious motives.   And the reason for the rule, as stated by Blackstone, 3 Com. 126, is " that it would be a very great discouragement to public justice if prosecutors, who had a tolerable ground of suspicion, were liable to be sued at law whenever their indictments miscarried."   The action has been extended to civil as well as criminal cases where legal process has been maliciously used against another without probable cause.   But the action for a malicious prosecution is the only one in which the party is not liable, although he acts from malicious motives, and has inflicted unmerited injury upon another.   The rule is not of a character to recommend it to favor; nor to induce a court of justice to extend it beyond the limits to which it has heretofore been confined.   And this is not an action for a malicious prosecution; but for an assault and false imprisonment.   And whether the acts charged were done or not, and what motives actuated the defendant, are questions of fact exclusively for the jury; and probable cause or not is of no further importance than as evidence to be weighed by them in connection with all the other evidence in the case, in determining whether the defendant acted from a sense of duty or from ill-will to the plaintiff.

It is an action by a marine against his commanding officer, for punishment inflicted upon him for refusing to do duty, in a foreign port, upon the ground that the time of his enlistment

had expired, and that he was entitled to his discharge.  The case is one of much delicacy and importance as regards our naval service.   For it is essential to its security and efficiency that the authority and command confided to the officer, when it has been exercised from proper motives, should be firmly supported in the courts of justice, as well as on shipboard.   And if it is not, the flag of the United States would soon be dishonored in every sea.   But at the same time it must be borne in mind that the nation would be equally dishonored, if it permitted the humblest individual in its service to be oppressed and injured by his commanding officer, from malice or ill-will, or the wantonness of power, without giving him redress in the courts of justice.

At the time these events happened Captain Wilkes was in a distant sea, charged with the execution of a high public duty.  He was bound, by all lawful means in his power, to preserve the strength and efficiency of the squadron intrusted to his care, and was equally bound to respect the rights of every individual under his command.   It is hardly necessary to inquire whether the plaintiff was or was not entitled to his discharge at the time he demanded it.   It is, however, very clear that he was not.  But to guard against a misconstruction of this opinion, it is proper to say that the right to determine the question was, for the time being, in Captain Wilkes.   In his position as commander, the law not only conferred upon him this power, but made it his duty to exercise it.   If, in his judgment, the plaintiff was entitled to his discharge, it was his duty to give it, even if it was inconvenient to weaken the force he commanded.  But if he believed he was not entitled, it was his duty to detain him in the service.   Captain Wilkes might err in his decision.  But that decision, for the time being, was final and conclusive; and it was the duty of the plaintiff to submit to it, as the judgment of the tribunal which he was bound by law to obey; and for any error of judgment in this respect, no action would lie against the defendant.

Nor did the belief of the plaintiff as to his rights, furnish any justification for his disobedience to orders.   For there would be an end of all discipline if the seamen and marines on board a ship of war, on a distant service, were permitted to act upon their own opinion of their rights, and to throw off the authority of the commander whenever they supposed it to be unlawfully exercised.   And whether the plaintiff was legally entitled to his discharge or not, his disobedience, when the question had been decided against him by the proper tribunal, was an act of insubordination for which he was liable to punishment.

So, too, as regards the degree of punishment to which he was subjected.   It was the duty of Captain Wilkes to maintain

proper discipline and order among the officers and men under his command, and if a spirit of disobedience and insubordination manifested itself in the squadron, he was bound to suppress it; and he might use severe measures for that purpose, if he deemed such measures necessary. And if, in his judgment, the continued refusal of the plaintiff to do duty made it proper to confine him on shore, rather than on shipboard, in order to reduce him to obedience,—or necessary as an example to deter others from a like offence, he was justified in so doing.; and while he acted honestly and from a sense of duty, and with a single eye to the welfare of the service in which he was engaged, the law protects him. He is not liable to an action for a mere error in judgment, even if the jury suppose that milder measures would have accomplished his object.

But, on the other hand, he was equally bound to respect and protect the rights of those under his command, and to cause them to be respected by others; to watch over their health and comfort; and, above all, never to inflict any severer or harsher punishment than he, at the time, conscientiously believed to be necessary to maintain discipline and due subordination in his ships. The almost despotic powers with which the law clothes him, for the time, and which are absolutely necessary for the safety and efficiency of the ship, make it more especially his duty not to abuse it. And if, from malice to an individual, or vindictive feeling, or a disposition to oppress, he inflicted punishment beyond that which, in his sober judgment, he would have thought necessary, he is liable to this action.

This is not a case where the punishment alleged to have been inflicted was forbidden by law, or beyond the power which the law confided to him. For, in such a case he would be liable whatever were his motives. But the fact to be ascertained in this case is whether, in the exercise of that discretion and judgment with which the law clothed him for the time, and which is in the nature of judicial discretion, he acted from improper feelings, and abused the power confided to him to the injury of the plaintiff.

The case, therefore, turns upon the motive which induced Captain Wilkes to inflict the punishments complained of. And this question is one exclusively for the jury, to be decided by them upon the whole testimony. And the rule of law by which they must be governed in making up their verdict is contained in a single proposition. It is this:

If they believe, from the whole testimony, that the defendant, in all the acts complained of, was actuated alone by an upright intention to maintain the discipline of his command and the interest of the service in which he was engaged, then the plaintiff is not

entitled to recover. But, if they find that the punishment of the plaintiff was in any manner or in any degree increased or aggravated by malice or a vindictive feeling towards him on the part of Captain Wilkes, or by a disposition to oppress him, then the plaintiff is entitled to recover.

And, in deciding this question, they are to take into consideration the service in which Captain Wilkes was engaged; the place where these transactions happened; the condition of the vessels under his command; the spirit and temper of the marines and seamen, as he understood it to be, in his own vessel and the other vessels of the squadron, gathering his knowledge from his own observation as well as the information of others; also the nature and character of the voyage yet before him, and which it was his duty, if possible, to accomplish; and how far the conduct and example of the plaintiff might, in the judgment of the defendant, be calculated to embarrass or frustrate it altogether, unless he was reduced to obedience. And further, that, under the order to imprison him in the fort, if the jury believe it to be truly stated in the defendant's testimony, the plaintiff was left at liberty to relieve himself from confinement at any moment by returning to his duty.

But, on the other hand, the jury must likewise take into consideration the different punishments he received; his confinement in the fort on shore; the situation and condition of the place; the character of the persons by whose authority it was governed; his food; his clothing and general treatment; and whether Captain Wilkes, through proper officers, inquired into his treatment and condition during the time of his confinement. For, certainly, when, from whatever motives he had placed him out of the protection which the ordinary place of confinement on shipboard afforded, in a prison belonging to and under the control of an uncivilized people, it was his duty, through proper and trustworthy officers, to inquire into his situation and treatment, and to see that it was not cruel or barbarous in any respect; and that he did not suffer for the want of those necessaries which the humanity of civilized countries always provides even for the hardened offender.

As to the questions of evidence, we think the letter of Mr. Emmons, with the papers attached to it, mentioned in the first exception, was properly admitted, since it was calculated to make an impression on the mind of Captain Wilkes as to the temper and disposition of the marines in one of the vessels composing the squadron.

But the proceedings of the courts-martial, mentioned in the second exception in the cases of Ward and Riley, ought not to have been received. For some of the offences with which they

were charged were committed a long time before the refusal of the plaintiff to do duty, and were not, therefore, any evidence of a spirit existing at that time. And when the testimony in this exception is rejected, that offered by the plaintiff in the third exception to rebut it, will also be inadmissible, although it would be legal and admissible if the proceedings of the courts-martial could be legally received. But the evidence stated in both of these exceptions ought to have been refused.

The evidence stated in the fourth exception, as to the punishment of Weaver and Waltham, was properly rejected, as it can have no application to the matter in issue.

The opinion in the fifth exception is also correct. For, it appears from record, that Captain Wilkes claimed the right to detain the plaintiff in service during the cruise, under the contract made by the plaintiff with Commodore Jones, in October, 1837, and not under the act of March 2, 1837. He could not, therefore, certify that he had detained him under that act.

But the testimony offered by the plaintiff in the sixth exception ought to have been received. For, after the defendant had offered testimony to show that American seamen were confined in the fort at the time the plaintiff was imprisoned there, the plaintiff had a right to show that it was not the usual place of confinement, and that refractory seamen, who could not be safely confined on board their own vessels, were uniformly or generally confined on board American ships of war. The testimony on the part of the defendant was admissible, to show that he was not actuated by vindictive feelings in imprisoning the plaintiff in the fort, and that offered by the plaintiff to rebut it, and to show the contrary. But neither was admissible for any other purpose. And it is for the jury to consider what degree of weight, if any, the testimony on either side mentioned in this exception is entitled to, in deciding upon the motives of Captain Wilkes, taking it in connection with all the evidence in the case.

These six exceptions are the only ones which relate to questions of evidence. The rest of them apply to the merits of the case, and to the principles of law by which it is governed. Upon these we have already expressed the opinion of the court, without deeming it necessary to specify each particular instruction given or refused, that ought, in our judgment, to be affirmed or reversed. We have already said, that there is but a single question of law and but one instruction proper. And, upon the grounds and for the reasons hereinbefore stated, the judgment of the Circuit Court must be reversed and a *venire de novo* awarded.

## Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the District of Columbia, holden in and for the County of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo*.