Nancy Lee PRESSON, f/k/a Nancy Lee Jansen, Plaintiff,

v.

Robert M. SLAYDEN, Joan E. Anderson, Harlan B. Groover, Richard Teipel, William W. Lewis, Jr., Alfred Camp and Arthur Simpson, each sued individually; and, Secretary of the Army, in his official capacity only, Defendants.

Civ. A. No. C80–314A.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 7, 1983.

Ray Norvell, Decatur, Ga., for plaintiff.

Nina Hunt, Atlanta, Ga., for defendants.

MEMORANDUM OPINION AND ORDER

HORACE T. WARD, District Judge.

Plaintiff, a former member of the United States Army, filed this action on February 26, 1980 for alleged violations of her constitutional rights and for torts allegedly committed by the defendants. Defendant Robert Slayden was the post psychiatrist at Fort McPherson, Georgia during all times relevant to this lawsuit. Defendant Joan Anderson was WAC Co. Commander during this period, and was defendant Harlan Groover's immediate superior. Defendant Richard Teipel was the Post Information Officer and plaintiff's duty supervisor. Defendant William Lewis was the Post Commander, defendant Alfred Camp was the Post Sergeant Major, and defendant Arthur Simpson was Patient Administrator at the base hospital.

Plaintiff's first amended complaint, filed June 30, 1981, contains two counts. Count One seeks damages against the individual defendants for violations of amendments 1, 4, 5, 8 and 9 of the U.S. Constitution and for certain alleged torts. The complaint essentially alleges that defendant Slayden prescribed Stelazine for the plaintiff without her knowledge and consent in order to make her "function more appropriately in the military" and to "induce symptoms of psychosis". Plaintiff contends that defendant Slayden initially prescribed Stelazine before he had seen her, that he never informed her about the "dangerous" nature of the drug Stelazine and that he has attempted to conceal the fact that he issued a prescription prior to having seen her. De-

fendant Anderson allegedly "administered" the Stelazine to plaintiff, stating that it was "cold medicine".

Plaintiff contends that all of the Count One defendants except Camp considered her to be "mentally ill" and contributed to the forced administration of mind-altering drugs. She claims that the defendants sought to control her mind, modify her behavior, punish her for exercising her constitutional rights and deter future similar conduct.[1] In sum, Count One alleges that the defendants willfully, fraudulently and in bad faith secretly administered, ordered, forced and coerced plaintiff to take drugs, including Stelazine and LSD, so as to induce symptoms of schizophrenia to create a basis for discharging plaintiff from the army. Plaintiff states that these acts violated several criminal statutes,[2] the Uniform Code of Military Justice,[3] Ga.Code Ann. § 84–916 (unlawful practice of medicine) and several Army regulations in addition to the U.S. Constitution. She claims to have suffered temporary and permanent physical, emotional, and economic injury and seeks $1,000,000 in general and special damages, $2,000,000 in punitive damages and attorney's fees pursuant to 42 U.S.C. § 1988.

Count Two alleges that all of the defendants have continuously conspired to violate plaintiff's constitutional rights and to tortiously injure her. She seeks an additional $3,000,000 for the injuries allegedly sustained as a result of this purported conspiracy, reserving her claims against defendant Secretary of the Army under Count Three.

Plaintiff amended her complaint a second time in March of 1983 to add Count Three.[4] Plaintiff seeks to have her military records corrected pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2). Specifically, she re-quests that all references to defendant Slayden's diagnosis of schizophrenia be deleted from her records, that she be given an honorable discharge, that all records of her psychiatric discharge be destroyed, and that she receive back pay and attorneys fees in accordance with the Act. The lengthy allegations in Count Three primarily focus on plaintiff's due process claims (also set forth in Count I). She argues that she was denied all of her rights under AR600–20, § 5–29 et seq., and AR635–200 prior to and after her psychiatric discharge from the army.

## DISCUSSION

This case has a lengthy procedural history which need not be set forth in detail for the purposes of this order. There are several motions pending at the present time, including: plaintiff's motion for summary judgment on the issue of liability against defendant Slayden, the defendants' cross motion for summary judgment, defendants' motion to dismiss the case based on the *Feres* doctrine and absolute immunity, defendants' motion for a psychiatric examination of the plaintiff, plaintiff's motion to strike the affidavit of Chaplain Donald Jansen, plaintiff's motion to compel discovery and plaintiff's motion to deny cross-dispositive motions and proceed to trial or to defer ruling pending the Supreme Court's decision in *Wallace v. Chappell*, 661 F.2d 729 (9th Cir.1981). After a thorough review of the record in this case, the court finds it necessary to examine only the dispositive motions. Before proceeding to do so, the pertinent facts will be set forth.

Plaintiff enlisted in the Army in October of 1973 and worked as an "information spe-

---

1. Plaintiff was a self-described "whistleblower" and states that among the motives behind defendants actions was their desire to keep her quiet. She claims to have been investigating activities such as drug trafficking, bureaucratic waste, sex discrimination and lesbianism in the army. (See Plaintiff's brief of August 3, 1981).

2. Plaintiff lists the following criminal statutes: 18 U.S.C. §§ 113, 242, 245, 1001, 1503, 1505, 1621 and 1622.

3. UCMJ, Articles 55, 84, 92, 93, 97, 128, 131, 132, 133, 145, 10 U.S.C.A. §§ 855, 884, 892, 893, 897, 928, 931, 932, 933, 945.

4. Count III was part of the original complaint but was dismissed by this court and re-filed in the United States Court of Claims. Plaintiff has reduced her claim so as to comply with the jurisdictional limit of $10,000 and has dismissed her case in the Court of Claims.

cialist". She had some "personal problems" during this time, which led to difficulties getting along with her co-workers and room-mates, as well as run-ins with superior officers.[5] In June of 1974 defendant Joan Anderson became the WAC Commander at Fort McPherson. The plaintiff approached her immediately and continuously with requests for a recommendation to Officer Candidate School. Eventually Captain Anderson determined that in her opinion the plaintiff was not officer candidate material, and that she did not consider the plaintiff to be suitable for military service. She referred the plaintiff to the psychiatric clinic for a mental status evaluation in order to determine whether a "Chapter 13" or "unsuitability" discharge was appropriate. (A.R. 635–200)[6]

The plaintiff's first visit to the psychiatric clinic was in June of 1974, when she met with base Chaplain Jansen. On July 22, 1974 she had an appointment at the clinic with a staff member.[7] On August 16, 1974 medication was prescribed for the first time. The prescription was for Stelazine, which plaintiff was instructed to take three times a day. During this period several psychological tests were done. Defendant Slayden met with her for her first formal evaluation on October 15, 1974, after which he diagnosed plaintiff as paranoid schizophrenic. She did not "improve" or respond to the medication according to Dr. Slayden, and on November 19, 1974 he recommended that she be discharged from the service for medical reasons. Plaintiff was informed of the intended psychiatric discharge on November 21, 1974 by defendant Simpson.

The plaintiff was processed for discharge under AR40–3, Chapters 7 & 8 which cover medical board action and separation for physical or mental impairments. A medical board proceeding was held on December 11, 1974. The three board members, all Medical Corps officers (including Defendant Slayden) recommended presentation of the case to the Physical Evaluation Board (PEB) and separation of the plaintiff. At plaintiff's request, a second psychiatric opinion on her condition was obtained. Dr. David Armitage issued his evaluation on December 17, 1974, which essentially concurred with Dr. Slayden's diagnosis.

The formal hearing before the PEB was held on April 1, 1975. Plaintiff was present, with counsel, and submitted several written statements on her own behalf. She argued that she was capable of performing her duties, and that the diagnosis of schizophrenia was in error. The PEB found her to be physically unfit due to "schizophrenic reaction, paranoid type", and recommended separation from the military. On May 19, 1975 this separation was effected.

The plaintiff sought a review of these findings pursuant to 10 U.S.C. § 1552, which authorizes the Army Board for Correction of Military Records to correct any military record if it deems this necessary. On January 9, 1980 the Board denied plaintiff's request, finding that she failed to submit sufficient evidence to warrant a formal hearing. Count III of the present complaint seeks review of this finding. The

---

5. The plaintiff was "recycled" in basic training. Her commander in Advanced Individual Training at Fort Benjamin Harrison, Indiana recommended she be discharged due to inability to adjust to the military. She was given "another chance" and assigned to Fort McPherson.

6. Chapter 13 provides that a unit commander who institutes an action to separate an individual for unsuitability *must* insure that an appropriate medical evaluation and mental status evaluation are obtained. If it is subsequently determined that the individual does not meet "retention medical standards" the Chapter 13 proceedings must be closed.

7. Plaintiff denies having seen anyone other than Chaplain Jansen prior to October 7, 1974. Defendant Slayden stated in his November 19, 1974 report that psychological testing was *completed* on October 7, and revealed that plaintiff exhibited "delusional thinking", "hallucinations", "thought disturbance", etc. (characteristics of paranoia and mania). A report by Phillip Dalton, a social worker, indicates that the plaintiff "accomplished regular sessions of psychotherapy during a course approximating 6 months". His report lists three individuals as those involved in plaintiff's treatment: Dr. Slayden, Chaplain Jansen, and Greg Breuninger, a social worker.

present lawsuit was filed on February 26, 1980.

In response to the numerous allegations in the complaint, the defendants make several arguments. Essentially it is argued that no torts occurred, but that even if plaintiff's allegations are true, the defendants are immune from suit. Defendant Slayden is said to be absolutely immune from suit under the *Feres* doctrine.[8] All of the defendants argue that they are not liable for common law torts under this doctrine, despite the allegation that they were intentionally committed. They contend that even if plaintiff has stated a constitutional tort action, and even if absolute immunity is not available, she could not carry her burden of showing malicious intent since the defendants were acting pursuant to their duties and within the scope of their authority. Further, they argue that the action is barred by the two-year statute of limitations on personal injury actions under Georgia law. Another defense is that plaintiff failed to exhaust her administrative remedies and that therefore this case is not subject to judicial review.[9]

The court has concluded that the essence of this dispute is the legal question of whether the plaintiff may state a cause of action for constitutional violations against her superior officers, and if so, whether she has stated such a case. This threshold question must be addressed before examining the actual allegations and the evidence in this case. The parties have each provided substantial authority to support their respective positions on this point, which pro-vides the basis for the following discussion. It must be noted that the plaintiff has relied heavily on policy arguments, which, despite their compelling logic cannot form the basis for this court's decision.

The Supreme Court has clearly enunciated that where federal officials are sued under the constitution, qualified immunity is the general rule. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court has recognized two exceptions to this rule: 1) where defendants demonstrate "special factors counseling hesitation" which would justify absolute immunity[10] and 2) when defendants can show that Congress has provided an alternative remedy which is equally effective and which was explicitly meant to be a substitute for recovery under the constitution. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 at 396–97, 91 S.Ct. 1999 at 2004–05, 29 L.Ed.2d 619 (1971); *Carlson,* 446 U.S. at 18–19, 100 S.Ct. at 1471.

Several courts have held that military officials are absolutely immune from liability for service-connected injuries.[11] Most of these decisions are based upon the *Feres* doctrine, which prevents members of the military from bringing actions against the United States under the Federal Torts Claims Act. Although the *Feres* decision has been extended to support findings of absolute immunity in several contexts (e.g.

---

**8.** 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

**9.** Defendants contend that plaintiff's failure to pursue her remedy under 10 U.S.C. § 938 constitutes a failure to exhaust administrative remedies. See *Wallace v. Chappell,* 661 F.2d 729, 738 n. 111 (9th Cir.1981).

**10.** *See, Bush v. Lucas,* 598 F.2d 958 (5th Cir. 1979); vacated and remanded 446 U.S. 914, 100 S.Ct. 1846, 64 L.Ed.2d 268 (1980); on remand 647 F.2d 573 (5th Cir.1981).

**11.** Some of these decisions include: *Nagy v. United States,* 471 F.Supp. 383 (D.D.C.1979); *Misko v. United States,* 453 F.Supp. 513 (D.D.C.1978), aff'd., 593 F.2d 1371 (D.C.Cir.1979);

*Rotko v. Abrams,* 338 F.Supp. 46 (D.Conn. 1971), aff'd per curiam, 455 F.2d 992 (2d Cir. 1972); *Martinez v. Schrock,* 537 F.2d 765 (3d Cir.1976); cert. denied, 430 U.S. 920, 97 S.Ct. 1339, 51 L.Ed.2d 600 (1977); *Hass v. United States,* 518 F.2d 1138 (4th Cir.1975); *Jaffee v. United States,* 468 F.Supp. 632 (D.N.J.1979), remanded 592 F.2d 712 (3d Cir.1979), on remand 468 F.Supp. 632 aff'd., 663 F.2d 1226 (en banc) (3d Cir.1981); cert. den. 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1982); *Calhoun v. United States,* 475 F.Supp. 1 (S.D.Cal.1977); affirmed, 604 F.2d 647 (9th Cir.1979); cert. denied 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980).

in suits against individuals and actions based on the constitution or common law), some courts have refused to bar tort actions or constitutional claims on this basis.[12]

*Feres* was a negligence action brought by the estate of a deceased serviceman whose death resulted from the allegedly defective heating plant which caused his barracks to burn. The action was brought against the United States pursuant to the Federal Torts Claims Act (FTCA). The Supreme Court, recognizing that claims against private individuals are very different from those against the federal government, interpreted the FTCA to waive immunity only for "recognized causes of action" and not to create "novel and unprecedented liabilities." The court stated that "[w]e know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving.[10]

[10] Cf. *Dinsman v. Wilkes,* 12 How. 390, 13 L.Ed. 1036 . . ."

This often quoted statement in *Feres,* found at 340 U.S. 157, has been the focus of much controversy in subsequent decisions.

The court's holding in *Feres* apparently was based upon the "federal character" of the relationship between the government and members of the armed forces, and on the fact that Congress created other remedies for such "injuries incident to military service" (referring to what is now known as the Veterans' Benefits Act, 38 U.S.C. § 301 *et seq.*). The court recently affirmed its holding that such actions are unavailable, adding that the peculiar and special relationship of soldiers to their superiors and the need for military discipline necessitate immunity from tort actions. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977).

After *Stencel* it is entirely clear that the Supreme Court intended to bar actions against the United States under the FTCA by members of the military. The Fifth

Circuit recognized the *Feres* doctrine in *Stanley v. CIA,* 639 F.2d 1146 (1981), on remand 549 F.Supp. 327 (S.D.Fla.1982). *Stanley* involved a suit against the government and several individuals under the FTCA for injuries resulting from the plaintiff's voluntary participation in a chemical warfare experimentation program, during which the plaintiff received LSD without his knowledge. The court focused on whether the plaintiff's injuries were sustained incident to his military service, and found that they were. The court observed that *Feres* has been extended to apply to suits against individuals, and to "hold the United States immune to suits based on intentional or reckless as well as constitutional torts". *Id.* at 1152. In holding that *Feres* barred the action, the court noted that its reasoning applied regardless of whether or not the complaint alleged negligence. *Id.* at 1153.

The Fifth Circuit's decision in *Stanley* is the most recent binding precedent relative to the issue before this court. The opinion clearly states that where the *Feres* doctrine applies, an action should be dismissed for lack of subject matter jurisdiction. It is important to note that the court in *Stanley* found that the plaintiff had a colorable *Bivens* claim (based upon the constitution instead of the FTCA) and remanded the case in order to allow the complaint to be amended. No mention was made of any obstacle to a *Bivens* action.

On remand the district court expressly found that *Feres* only bars claims against the government under the FTCA (and against individual officers for common law torts) and that *Bivens* actions may be sustained against individuals for constitutional violations. 549 F.Supp. at 330. The judgment was subsequently vacated due to the plaintiff's failure to either identify or serve the individual defendants against whom the action was authorized. 552 F.Supp. 619.

Despite this decision, we are left with little guidance from this circuit in the

**12.** *Stanley v. CIA,* 639 F.2d 1146 (5th Cir.1981), on remand 549 F.Supp. 327 (S.D.Fla.1982); *Wallace v. Chappell,* 661 F.2d 729 (9th Cir. 1982); *Alvarez v. Wilson,* 431 F.Supp. 136 (N.D.Ill.1977); *Tigue v. Swaim,* 585 F.2d 909 (8th Cir.1978).

present case on the question of whether individual military officers may be sued directly under the Constitution for service-related injuries. The district court's holding in *Stanley* is no more binding than the decisions previously cited. (See notes 11 and 12, supra). Without a definitive statement from this circuit, and with no Supreme Court authority directly on point,[13] this court is forced to examine existing case law with an eye toward following the weight of authority.

The Third Circuit confronted similar questions in the case of *Jaffee v. United States,* 663 F.2d 1226 (en banc) (1981). The plaintiff in *Jaffee* was compelled to participate in a nuclear test during his service in the army in 1953, and later filed suit against the government and various individuals for violations of the U.S. Constitution (Amendments 1, 4, 5, 8 and 9) and state tort laws after developing inoperable cancer in 1977. The en banc court reviewed the Supreme Court's treatment of direct actions against federal officials under the Constitution, as well as the Court's analyses of intra-military claims under the FTCA.

The en banc court reasoned that the policy concerns expressed in *Feres* are equally if not more profoundly applicable in suits against individuals, and that the distinctions between different types of injuries should not affect the reasons for granting immunity. Based upon the "deleterious effects of service-related suits on military performance" and the existence of alternative remedies (Veterans' Benefits) the court concluded that a cause of action directly under the Constitution was unavailable. *Jaffee,* supra at 1235–1236.

The District Court for the District of Columbia came to a similar conclusion in *Misko v. United States,* 593 F.2d 1371 (1979). *Misko* involved a claim by a former National Guard officer against the United States and four army medical officers. The plaintiff alleged that the psychiatrists gave him drugs and confined him against his will without medical justification, which he claimed violated his Fifth Amendment due process rights and constituted negligent medical treatment.

The court dismissed the case based on the *Feres* doctrine, without directly addressing the question of the availability of a cause of action under the Constitution. The due process claim was viewed as essentially the same as the medical malpractice claim, and the court found that *Feres* (extending the case to cover claims against individuals) barred the action.

Several other district courts have applied the *Feres* decision to block actions brought under the Constitution, often finding that the allegations of the complaint constitute a restatement of a tort action.[14] The plaintiff in *Nagy v. United States* sued his superior officers in the army for negligence and constitutional violations due to alleged damages resulting from psychological injuries sustained after participating in LSD experiments. The plaintiff contended that the experiments were performed without his informed consent, and that the medical follow-up was inadequate. The court simply held that *Feres* applied regardless of whether the action was based upon the Constitution, citing *Misko* and *Jaffee.* The court noted that the plaintiff was attempting to circumvent the defendants' immunity

**13.** The Supreme Court's decision in *Dinsman v. Wilkes,* 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851) is heavily relied upon by the plaintiff in arguing against immunity in this case. *Dinsman* was a suit by a marine against his commanding officer for assault and false imprisonment. The court found that the motive of the commanding officer in imposing the punishment was the key question in terms of his liability; due to the importance of maintaining discipline, if the commander acted out of a sense of duty then his acts were protected.

*Dinsman* essentially set forth the principles of qualified intra-military immunity, which the Supreme Court later modified in the *Feres* decision. This court does not find *Dinsman* to control in the instant case.

**14.** *Calhoun v. United States,* 475 F.Supp. 1 (S.D.Cal.1977); *Rotko v. Abrams,* 338 F.Supp. 46 (D.Conn.1971), aff'd per curiam, 455 F.2d 992 (2d Cir.1972); *Nagy v. United States,* 471 F.Supp. 383 (D.D.C.1979).

by an exercise in pleading, and declined to allow the action to proceed.

Only one circuit court has expressly rejected the application of the *Feres* doctrine in this context.[15] The Ninth Circuit, in *Wallace v. Chappell,* 661 F.2d 729 (1981) relied on the Supreme Court's decision in *Butz v. Economou,* supra and on *Dinsman v. Wilkes* and concluded that a constitutional claim for injuries related to military service is not necessarily precluded. *Id.* at 735. The court reasoned that the policy behind immunity is not applicable to most routine military decisions during peacetime, and found that the *Feres* rationale was not persuasive under the facts of the case.[16] The court did recognize that absolute immunity could be justified in the military context in some situations, but adopted the intermediate course and engaged in the qualified immunity analysis. *Id.* at 737.

The Ninth Circuit reversed and remanded *Wallace,* indicating some hesitancy to review the case on its merits. There were two reasons given for the remand: 1) a need to determine whether the case is reviewable at all[17] and 2) the requirement that administrative remedies be exhausted.[18] A primary concern of the court, shared by most other courts faced with this issue, was whether the alleged violations involved recognized constitutional rights or merely traditional state law claims "couched in constitutional rhetoric".

Nevertheless, the court was unequivocal in its finding that the defendants in the case were entitled to qualified immunity only. This case has recently been argued before the Supreme Court on a petition for certiorari; a decision should be forthcoming.

The defendants contend that even under *Wallace* this case should be dismissed, because it is unreviewable under *Mindes,* and due to plaintiff's failure to exhaust her administrative remedies. They argue that even if the Supreme Court were to rule that a *Bivens* action can be stated against military officials, there are additional reasons why plaintiff's case should be dismissed. These include: the bar of the statute of limitations, and the *Feres* doctrine, which clearly bars tort actions against military officials.

## CONCLUSION

After considering all of the arguments and allegations in this case, the court has concluded that there is no need to await the Supreme Court's decision in *Wallace v. Chappell.* The plaintiff's allegations consist of nothing more than state law torts, such as assault and battery, medical malpractice and infliction of emotional distress. The plaintiff has quite simply failed to state a claim under the U.S. Constitution. Her First Amendment claim fails, since the defendants cannot have prevented her from revealing any of the alleged illegal activi-

---

**15.** Two courts have clearly held that qualified and not absolute immunity should apply in these cases. *Alvarez v. Wilson,* 431 F.Supp. 136 (N.D.Ill.1977); *Tigue v. Swaim,* 585 F.2d 909 (8th Cir.1978). *Tigue* was a common law tort action in which the court refused to automatically grant immunity, but found the defendant to be immune anyway. The Eighth Circuit stands alone in not granting absolute immunity for common law torts in the military context.

**16.** *Wallace* involved a claim of race discrimination by a black navy enlisted man, brought pursuant to the 5th Amendment and 42 U.S.C. § 1985(3).

**17.** The court directed the district court to apply the factors set out in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971) in determining whether review should be granted:

(1) The nature and strength of plaintiff's claim.
(2) The potential injury to the plaintiff if review is refused.
(3) The extent of interference with military functions.
(4) The extent to which military discretion or expertise is involved.

**18.** The court observed that two principle intraservice remedies were available. One was 10 U.S.C. § 938 (1976), which provides for complaints by members of the armed forces who believe they have been wronged by a commanding officer. The defendants in this case argue that the remedy applies here and must be exhausted. The other remedy was a navy regulation prohibiting racial discrimination. 661 F.2d at 738, n. 11.

ties which she claims to have observed while in the army. The plaintiff has always been free to expose any of the information she possessed; the defendants' alleged actions could not logically have prevented her from doing so.

The plaintiff has not stated a claim of denial of due process by her argument that she had the right to choose an administrative discharge instead of being medically discharged. This is simply not true. None of the evidence supports her due process contentions with regard to the medical board or PEB proceedings.

Finally, the plaintiff has failed to state a claim based on the recognized right to refuse treatment. *Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). The facts of this case simply do not support plaintiff's contention that she was forced or coerced in any manner to take drugs. The treatment she received was clearly voluntary. Whether or not she was properly informed as to the purpose and/or possible effects of the prescription she was given is a medical malpractice question. Similarly, the allegation that Dr. Slayden prescribed a "dangerous drug" prior to having seen the plaintiff is a medical malpractice claim and does not rise to the level of a constitutional violation.

The clear weight of authority says that the *Feres* doctrine bars intra-military tort claims. (See footnote 11, supra). The courts are wary of tort claims disguised as constitutional or *Bivens* actions,[19] and even the Ninth Circuit in *Wallace* acknowledged that a plaintiff must allege recognized constitutional claims in order to sustain a cause of action. "We distill from *Calhoun* the principle that an allegation of wrongdoing does not assume constitutional dimensions simply because the plaintiff states that it does." 661 F.2d at 734. In short, the court concludes that Counts One and Two of the complaint must be dismissed, since this court is without jurisdiction over them.[20] Count Three, which involves the correction of plaintiff's military records, is unaffected by this decision.

The court rules as follows on the outstanding motions in this case: plaintiff's motion for summary judgment against defendant Slayden is DENIED; plaintiff's motion to compel defendant Slayden to produce insurance information is DENIED as moot; defendants' motion to dismiss is GRANTED, which renders defendants' cross motion for summary judgment MOOT; plaintiff's motion to strike the Jansen affidavit is DENIED as moot; plaintiff's motion to deny cross-dispositive motions and proceed to trial or to defer ruling is DENIED. Defendants' motion for a "physical" examination, filed on October 5, 1981, is actually a motion for a psychiatric examination. The court sees no reason to deny the motion, since it would appear to be relevant to Count III, but DEFERS ruling on the motion until the plaintiff responds. (Plaintiff's prior response addressed the motion as one for a physical and not a psychiatric exam due to the misleading caption). Plaintiff is DIRECTED to respond to the motion within twenty days.

---

**19.** *Misko v. United States,* supra; *Calhoun v. United States,* supra; *Rotko v. Abrams,* supra; *Nagy v. United States,* supra.

**20.** *Stanley v. CIA,* 639 F.2d at 1153.