Vernon WALLACE, Robert Lemons, Cornelius Hickey, James Richardson, and George Shannon, Plaintiffs-Appellants,

v.

Commander George C. CHAPPELL, Lieutenant Commander Kenneth Viafore, Lieutenant Clarence Schultz, Lieutenant Barron Bianco, Lieutenant Kenneth Jordan, EMC Richard McCannon, ICC David Lamser, and MSC Lumberto Papa, Defendants-Appellees.

No. 79-3172.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1979.

Submission Vacated Aug. 19, 1980.

Ordered Resubmitted Feb. 2, 1981.

Decided Nov. 2, 1981.

Rehearing and Rehearing En Banc Denied March 2, 1982.

See also, 9th Cir., 637 F.2d 1345.

John Murcko, Oakland, Cal., for plaintiffs-appellants.

Ed Kolker, Asst. U. S. Atty., San Diego, Cal., for defendants-appellees.

Before GOODWIN, HUG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

This action was brought by several black Navy enlisted men claiming discrimination on the basis of race. The complaint alleged that plaintiffs' superior officers had assigned them the least desirable duties, excluded them from training programs, given them low performance evaluations, and punished them with unusual severity for minor transgressions. It was further alleged that this discriminatory treatment would retard their present and future career development. Plaintiffs claimed violations of both the equal protection clause [1] and 42 U.S.C. § 1985(3) (1976). They

---

1. The complaint refers only generally to constitutional violations. Because the allegations of racial discrimination are very specific, however, we construe the general reference to the Constitution as an equal protection claim based on fifth amendment due process, *see e. g., Vance v. Bradley*, 440 U.S. 93, 94 n.1, 99 S.Ct. 939, 941, 59 L.Ed.2d 171 (1979); *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976).

Although the complaint might have been drafted with greater precision, it is apparent that the first claim advanced by each plaintiff is in the nature of a *Bivens* action. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (aggrieved party may bring damages action against federal official based directly on violation of fourth amendment). *Bivens* has been extended to fifth amendment equal protection claims. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

sought money damages and declaratory and injunctive relief.

 Defendants moved for dismissal or, alternatively, for summary judgment. The district court granted defendants' motion on three grounds: that internal military decisions were not reviewable, that defendants were immune from liability, and that plaintiffs had failed to exhaust their administrative remedies.[2] Plaintiffs appeal.[3]

At the outset, we distinguish between the two substantive grounds for the district court's decision: nonreviewability and immunity. Nonreviewability, in the present context, involves the question of whether a court may review a military decision to determine whether a substantive wrong has been committed. This question can arise regardless of the identity of the defendant, *i. e.*, whether the defendant is the United States or an individual federal official, and regardless of whether the remedy sought is damages or some form of non-monetary relief.

The official immunity question, in contrast, arises only when an individual official is sued for damages. If the underlying substantive claims are reviewable, the issue becomes whether the official can be held liable for damages for claims arising out of military service and, if so, under what circumstances.

We are thus presented with two difficult questions: whether constitutional claims by military personnel against their superior officers are subject to judicial review and whether the officers enjoy immunity from liability for money damages in connection with such claims. Because we conclude that some military decisions are reviewable and may give rise to liability for damages, we remand to the district court for reconsideration.

I

## REVIEWABILITY

We begin by noting numerous cases in which courts have reviewed internal military decisions. *See, e. g., Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (reviewing requirement that prior

**2.** We cannot tell from the record whether the district court treated the defendants' motion as one for dismissal under Fed.R.Civ.P. 12(b)(6) or summary judgment under Fed.R.Civ.P. 56. The plaintiffs, in opposing the defendants' motion, submitted a memorandum of law accompanied by documents evidencing exhaustion of various military remedies. The defendants' reply memorandum disputed the adequacy of the administrative steps taken by the plaintiffs. Since matters outside the pleadings were apparently presented to and not excluded by the court, the defendants' motion should have been treated as one for summary judgment. Fed.R. Civ.P. 12(b).

There are indications in the record that the court did not treat the motion as one for summary judgment. First, although the defendants moved for either dismissal or summary judgment, both the order granting the motion and the corresponding judgment referred exclusively to the "motion to dismiss." Second, although the order stated that the court had "reviewed the pleadings herein [and] the motion and memoranda of points and authorities filed by the parties," the order made no reference to plaintiffs' documentary evidence. Third, the court did not allude to rule 56, mention summary judgment, or purport to find an absence of factual disputes.

We must conclude that the district court erred in dismissing for failure to exhaust administrative remedies. Dismissal on the pleadings would have been improper, for the complaint expressly alleges exhaustion of administrative remedies. Summary judgment would also have been improper, as the record reveals an apparent factual dispute as to whether the administrative remedies were fully pursued. On remand, the district court may invite the parties to submit additional evidence on this issue before passing on the summary judgment motion.

**3.** Defendants moved to dismiss this appeal on the ground that the notice of appeal, filed 35 days after entry of final judgment, was untimely. Fed.R.App.P. 4(a)(1) establishes a 30-day period for filing notices of appeal in civil cases. An exception, however, allows 60 days when "the United States or an officer or agency thereof is a party." *Id.* Sitting en banc, this court held that the 60-day period governs the present appeal. *See Wallace v. Chappell*, 637 F.2d 1345 (9th Cir. 1981) (en banc). The motion to dismiss the appeal was denied, and the case was resubmitted to this panel to address the merits. *Id.* at 1348.

approval be obtained before circulating petition on base); *Dinsman v. Wilkes*, 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851) (reviewing damages claim by enlisted man against superior officer for assault and false imprisonment); *Tigue v. Swaim*, 585 F.2d 909 (8th Cir. 1978) (reviewing exclusion of plaintiff from program involving access to nuclear weapons); *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) (reviewing claim for injunctive and declaratory relief to void erroneous evaluation report); *cf. Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (reviewing equal protection challenge to discharge statute); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (reviewing decision by Adjutant General of Ohio National Guard to deploy Guard units on university campus); *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (reviewing less than honorable discharge); *Denton v. Secretary of Air Force*, 483 F.2d 21 (9th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974) (reviewing honorable discharge).

In other cases, we have refused to review various military decisions. *See, e. g., Schlanger v. United States*, 586 F.2d 667 (9th Cir. 1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); *Arnheiter v. Chafee*, 435 F.2d 691 (9th Cir. 1970); *Covington v. Anderson*, 487 F.2d 660 (9th Cir. 1973). Our cases do not, however, make clear which military decisions are reviewable and which are not. The task we face today is that of clarifying this difficult area of the law.

Any test governing the reviewability of claims arising incident to military service must reflect a careful balancing of conflicting policy considerations. Militating in favor of review is the plaintiff's strong interest in obtaining adequate redress for harm caused by the unconstitutional conduct of a federal official. In addition, society as a whole has an interest in deterring federal officials from knowingly violating individuals' constitutional rights.

In the military context, however, several countervailing policy considerations are present. A member of the armed forces is at a disadvantage in litigation because he or she often lacks time, money, and the means to procure witnesses. *Cf. Feres v. United States*, 340 U.S. 135, 145, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (articulating rationales favoring immunity from damages). Litigation is potentially disruptive to military operations. *See United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954); *Calhoun v. United States*, 475 F.Supp. 1, 3 (S.D.Cal.1977), *aff'd*, 604 F.2d 647 (9th Cir. 1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980). Permitting litigation can make it difficult to maintain discipline. *See, e. g., Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–2058, 52 L.Ed.2d 665 (1977); *Brown*, 348 U.S. at 112, 75 S.Ct. at 143 (1954); *Calhoun*, 475 F.Supp. at 3. Finally, the Supreme Court has voiced a general objection to judges "running the army," *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953), the implication being either that judicial review might usurp a military function or that the courts lack the competence to weigh the factors that might enter into a military decision. Under the Constitution, regulation of military affairs is within the special province of Congress rather than the courts. U.S. Const. art. I, § 8, cl. 14.

The Fifth Circuit has given careful thought to the problem of reconciling certain of these competing policies. In *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), the court identified several categories of internal military decisions that have been held reviewable and several categories that have not. *Id.* at 199–201. It then articulated a test, to be applied by the trial court, for ascertaining whether a particular military decision should be reviewed. *Id.* at 201–02.

The *Mindes* court held that an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of the Constitution, a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the trial court

must weigh four factors to determine whether review should be granted:

(1) *The nature and strength of the plaintiff's claim.* The *Mindes* court recognized that constitutional claims ordinarily carry greater weight than those resting on a statutory or regulatory base, but acknowledged that, within the class of constitutional claims, the nature and strength of the claim can vary widely.

(2) *The potential injury to the plaintiff if review is refused.*

(3) *The extent of interference with military functions.* The court observed that interference per se should not preclude review because some degree of interference will always exist.

(4) *The extent to which military discretion or expertise is involved.*

In *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979), we affirmed a district court decision applying the *Mindes* test.[4] Without discussion, we then applied the *Mindes* test to find a military decision reviewable in *Glines v. Wade*, 586 F.2d 675, 678 n.4 (9th Cir. 1978), *rev'd on other grounds sub nom.*

*Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980). We agree that, at least when constitutional claims are asserted,[5] the *Mindes* test is an appropriate means of deciding when military decisions are reviewable. With respect to such constitutional claims, however, we add a qualification that can be articulated only after describing the decision in *Calhoun v. United States*, 475 F.Supp. 1 (S.D.Cal.1977), *aff'd*, 604 F.2d 647 (9th Cir. 1979) (adopting opinion of district court), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980).

In *Calhoun*, the parents of a marine killed during training brought a wrongful death action against the United States and individual officers under the Federal Tort Claims Act. The parents also asserted numerous constitutional claims. The court held that the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (Government not liable under FTCA for negligence claims arising out of military service), barred recovery, even for the alleged constitutional violations. This holding was based on a conclusion that the constitutional claims were "essentially a restatement of the cause of action in tort." 475 F.Supp. at 5. The court explained:

**4.** The district court in *Schlanger* had found the particular decision unreviewable. After determining that the district court had properly applied *Mindes*, this court added in dictum that the same result could be reached in "a simpler and perhaps sounder manner" by denying review of all military decisions involving duty assignments. *Id.* at 671–72. For the reasons given in the text, we prefer the *Mindes* approach as a test for reviewability, at least when recognized constitutional claims are alleged.

On two occasions prior to *Schlanger*, we similarly refused to review military decisions involving duty assignments. *See Covington v. Anderson*, 487 F.2d 660 (9th Cir. 1973); *Arnheiter v. Chafee*, 435 F.2d 691 (9th Cir. 1970). Insofar as those decisions suggest a per se rule that all military duty assignments are unreviewable, they have been superseded by *Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), where the Supreme Court in fact reviewed a military duty assignment, *see Glines v. Wade*, 586 F.2d 675, 677 (9th Cir. 1978).

Our conclusion that there is no per se rule precluding review of duty assignments is bolstered by *Mir v. Fosburg*, 646 F.2d 342 (9th Cir. 1980), decided several months after the Su-

preme Court decision in *Glines*. In *Mir*, the district court had dismissed a state law claim challenging a military duty assignment. We reversed and remanded for a determination of whether the plaintiff should be given leave to amend to allege a federal claim. Our remand order would have been futile if all military decisions involving duty assignments were unreviewable.

**5.** We include within this category those statutory claims based on constitutional violations. Consequently, the test we announce today also governs plaintiffs' section 1985(3) claims, which are based on equal protection violations.

We express no view as to whether the *Mindes* test should govern federal nonconstitutional claims. *Cf. Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (reviewing claim that regulation prohibiting circulation of unapproved petition on Air Force base violated both federal statute and first amendment, but not discussing test for reviewability); *Dinsman v. Wilkes*, 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851) (reviewing common law claims of assault, battery, and false imprisonment).

Absent the deprivation of a *recognized* constitutional right, it would subvert the application of the Federal Tort Claims Act and its defined exceptions to allow a litigant to superimpose over that body of law extensions of constitutional rights which were never intended to apply in this context.

*Id.* (emphasis in original). We distill from *Calhoun* the principle that an allegation of wrongdoing does not assume constitutional dimensions simply because the plaintiff states that it does.

■ With respect to constitutional claims, therefore, our adoption of the *Mindes* test is limited to cases in which the plaintiff has alleged what the *Calhoun* court described as a "recognized" constitutional right. We do not mean by this term to eliminate from consideration those constitutional claims that have not yet been accepted by the courts. We mean only that the allegations must amount to more than a traditional state law claim.

The *Mindes* approach, as qualified, fairly accommodates the competing policy considerations discussed earlier. By limiting our holding to allegations of "recognized" constitutional violations, we hope to alleviate the understandable concern that a clever pleader can often transform the most innocuous state tort action into a claim of constitutional stature. *See, e. g., Everett v. United States,* 492 F.Supp. 318, 322 (S.D.Ohio 1980); *Schmid v. Rumsfeld,* 481 F.Supp. 19, 21 (N.D.Cal.1979); *Misko v. United States,* 453 F.Supp. 513, 515 (D.D.C.1978). *See also Calhoun,* 475 F.Supp. at 5.

The exhaustion requirement likewise furthers several purposes.[6] When the injured party obtains satisfaction through military channels, there will of course be no need for litigation. Even if the claimant's efforts prove unavailing, the initiation of an administrative complaint might encourage the defendant officers to cease their allegedly illegal activity, thus mitigating any harm

that would otherwise accrue. Perhaps most important, exhaustion of administrative remedies enables the reviewing court to benefit from the views and factfinding of the military authorities. In this way, the exhaustion requirement helps to minimize the objections to reviewability based on judicial usurpation of military discretion and the need for military expertise.

The first two factors that must be balanced under the *Mindes* test—the nature of the plaintiff's interest and the potential injury to the plaintiff if review is withheld—ensure that the plaintiff's interest in redressing the deprivation of constitutional rights is automatically taken into account. The same factors also guarantee that the likelihood of deterring official misconduct will be greatest in those situations in which the interest served by such deterrence is greatest.

The third *Mindes* factor—the extent of interference with military functions—enables the trial court to consider at least three of the policies militating against reviewability: the avoidance of disruption, the potential adverse effect on discipline, and the logistic constraints on a soldier's capacity to defend a lawsuit. The fourth factor—the extent to which resolution of the claim requires military expertise—further reduces the possibility of judicial usurpation of military discretion.

We conclude that the *Mindes* test, as qualified above, provides an appropriate framework for determining which military decisions are reviewable and which are not.

## II

### IMMUNITY

If the trial court determines that a particular claim is nonreviewable, the immunity question becomes moot. If the court elects to review the claim, however, and the plaintiff seeks to recover money damages, the issue becomes whether the defendant possesses official immunity.

---

**6.** We need not delineate which intraservice remedies must be exhausted in all cases. The availability and usefulness of a particular remedy will vary with the branch of the armed forces involved and with the nature of the grievance. See footnote 11 for citation to the principal intraservice remedies.

The district court held that military officials are absolutely immune from liability for money damages for acts committed incident to military service. For the reasons given below, we cannot agree.

In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that federal officials exercising discretion possess only a *qualified* immunity from liability for damages in *Bivens*-type [7] actions alleging constitutional violations. Qualified immunity insulates an official who acts reasonably and in good faith. *See Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974). The Court created an exception, however, for cases in which absolute immunity "is essential for the conduct of the public business." 438 U.S. at 507, 98 S.Ct. at 2911. It recognized that some officials, such as judges, prosecutors, and their administrative agency counterparts, perform "special functions" requiring absolute immunity. *Id.* at 508–17, 98 S.Ct. at 2911–2916. The question presented here is under what circumstances, if any, a military officer comes within the *Economou* exception.

Defendants contend that *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) gives military officials absolute immunity. The plaintiffs in *Feres* sought money damages under the Federal Tort Claims Act for either personal injury or wrongful death allegedly caused by the negligence of military officials. Relying on the language of the FTCA, on related statutory provisions, and on the legislative history, the Court interpreted the FTCA not to authorize recovery of damages from the United States for injuries incurred incident to military service. *Id.* at 146, 71 S.Ct. at 159.

Defendants maintain that *Feres* applies to constitutional violations. We disagree. Even if *Feres* were applicable to intentional torts, a question which has not yet been answered, all that would follow is that the plaintiffs cannot recover under the FTCA. *Feres* says nothing about *Bivens*-type actions, which are based on constitutional violations.

We approach the absolute immunity question, then, with several considerations in mind. In *Dinsman v. Wilkes*, 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851), the Supreme Court allowed only qualified immunity from liability in connection with an internal military decision. More recently, in *Economou*, the Supreme Court held that in actions alleging constitutional violations, federal officials generally are entitled only to qualified immunity. The reference in *Economou* to *Dinsman*, 438 U.S. at 492–94, 98 S.Ct. at 2903–2904,[8] indicates that the fact that the constitutional claim was incident to military service would not necessarily preclude recovery.

In deciding whether the present case merits creating an exception to those two holdings, we observe that the rationales favoring reviewability, discussed above, likewise favor allowing recovery of money damages. The plaintiff's interest in redressing a constitutional grievance can often be served only by an award of money damages, which will restore the plaintiff as nearly as possible to the position he or she would have occupied but for the violation. Although society's interest in deterring unconstitutional conduct is furthered in some cases by the prospect of injunctive or declaratory relief, the deterrent effect is enhanced by the possibility of personal liability for money damages. The question before us, however, is whether countervailing considerations justify absolute immunity in the military context.

---

**7.** *See* note 1 *supra*. The Court in *Economou* was extending *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974), which recognized only qualified immunity in section 1983 actions against state officials, to *Bivens*-type actions against federal officials.

**8.** The reference in *Economou* was actually to the Supreme Court's first opinion in *Dinsman*. *See Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849). In that first opinion, the Court held that a seaman is liable if he inflicts injury out of malice, *id.* at 123, but ordered a new trial because the trial court had erroneously placed on the defendant the burden of showing genuine motives, *id.* at 132.

Many of the reasons that have prompted the courts to apply absolute immunity to other officials have no precise analogue in the military context. Judges and their administrative agency counterparts, for example, enjoy absolute immunity primarily because the adjudication function requires an unusual degree of impartiality, which would be lost if judges were continually in fear of personal liability in issuing decisions. *See, e. g., Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Sellars v. Procunier*, 641 F.2d 1295, 1299–1300 (9th Cir. 1981). In addition, judges' insulation from political influence, their use of precedent in resolving disputes, and the availability of appellate review have been thought to reduce the need for private damages actions. *See Economou*, 438 U.S. at 512, 98 S.Ct. at 2913; *Sellars*, 641 F.2d at 1300 n.9. *See also Imbler v. Pachtman*, 424 U.S. 409, 422–23, 96 S.Ct. 984, 991–992, 47 L.Ed.2d 128 (1976) (immunity of prosecutor based on considerations analogous to those supporting immunity of judge); *Beard v. Udall*, 648 F.2d 1264, 1270–71 (9th Cir. 1981) (same). These rationales do not apply to most routine military decisions made in a noncombat setting during peacetime.

Thus, unless some other consideration warrants a grant of absolute immunity to military officials, we must hold that only qualified immunity applies. We see two such possibilities. First, as we have discussed in connection with reviewability, the soldier is handicapped in defending a civil suit. The need for a strenuous defense might be accentuated if the soldier is potentially liable for money damages. Second, the threat to discipline might be aggravated by the threat of liability for money damages. On balance, however, although we recognize that a grant of absolute immunity might conceivably further those two rationales, the marginal benefit it provides in cases strong enough to survive the nonreviewability barrier does not in our view offset the substantial policies opposing absolute immunity.[9]

We therefore hold that once a constitutional claim against a military official has been found reviewable, the official will generally enjoy only a qualified immunity for acts performed in good faith. We recognize, however, that the considerations favoring absolute immunity might be sufficiently strong to warrant exceptions to this rule in certain contexts.[10] We leave to future courts the task of articulating exceptions when the need arises.

**9.** The rationales advanced by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), construing the Federal Tort Claims Act to bar liability of the United States for certain actions incident to military service, either are inapplicable here or have already been considered. First, the *Feres* Court believed it unfair to subject members of the armed services to varying standards of liability depending on the law of the place where they are stationed. 340 U.S. at 142–43, 71 S.Ct. at 157–158. This "nonuniformity" rationale is inapplicable to claims based on the Constitution. Second, the *Feres* Court noted that the United States is liable under the FTCA in the same manner that a private individual would be liable under the circumstances. Because military activities lack private counterparts, the Court concluded that Congress could not have contemplated recovery for claims arising out of military service. *Id.* at 141–42, 71 S.Ct. at 156–157. This rationale, of course, is entirely inapplicable to constitutional claims. Third, the Court noted that alternative statutory compensation schemes are available for military personnel receiving physical injuries. *Id.* at 144, 71 S.Ct. at 158.

No such statutory compensation is available here.

Similarly inapplicable are two of the rationales previously considered in the context of the reviewability question—the possibility that military operations will be disrupted, and the possibility of courts usurping military functions that they lack the competence to perform. Once a claim has been found reviewable, allowing a damages remedy would not exacerbate either the disruption or the usurpation. In each case, the principal disadvantage arises from the litigation itself.

**10.** Possible exceptions, for example, might relate to military officials who perform functions analogous to those of judges and prosecutors. We note also that absolute immunity might attach when decisions are made in a combat setting. *Cf. Tigue v. Swaim*, 585 F.2d 909, 914 (8th Cir. 1978) (military officers sometimes enjoy absolute immunity even during peacetime, depending on functions performed and interests to be protected).

We also note the availability of the summary judgment procedure for heading off a trial when there is no genuine issue as to bad faith. Although a summary judgment motion must be evaluated in the light most favorable to the party opposing the motion, *see Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978), any supporting and opposing affidavits submitted in connection with the motion must be based on personal knowledge, Fed.R.Civ.P. 56(e); *Cermetek*, 573 F.2d at 1376. Assertions based solely on information or belief are insufficient to withstand a motion for summary judgment. *Id.* at 1377; *cf. Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950) (such assertions insufficient to *support* motion for summary judgment), *overruled on other grounds, Lear, Inc. v. Adkins*, 395 U.S. 653, 671, 89 S.Ct. 1902, 1911, 23 L.Ed.2d 610 (1969). In determining whether there are genuine issues of material fact for summary judgment purposes, we see nothing to prevent the trial court from considering one of the most important objectives of the summary judgment procedure: "the elimination of waste of the time and resources of both litigants and the courts in cases where a trial would be a useless formality." *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). This policy assumes special significance in the military context because of the threat posed by a damages action to military discipline and because of the inconvenience suffered by a soldier in defending a civilian lawsuit.

## III

### SUMMARY AND APPLICATION

Our holding may be summarized as follows: If a complaint alleges a "recognized" constitutional claim based on injuries incident to military service, and alleges exhaustion of intraservice remedies, the trial court is to apply the four *Mindes* factors to determine whether the claim should be reviewed. If the claim is found reviewable, and the plaintiff is seeking money damages, military officials will have only qualified immunity except in unusual circumstances that we need not delineate here. When qualified immunity applies, the usual procedures for summary judgment are of course available. A court's ruling on summary judgment may reflect the strong policy against disruption of military functions.

A ruling barring judicial review or establishing absolute immunity is an extreme measure. In the present context, either type of rule would shield from responsibility even an official who knowingly and in bad faith violates an individual's constitutional rights. So drastic a ruling could be justified only by policy concerns of extraordinary magnitude. Our holding today recognizes that precisely such concerns frequently exist in the military context. When they do, nonreviewability or possibly absolute immunity will result. Even when they do not, the military officer will still be entitled to a qualified immunity for acts performed in good faith.

To adopt a per se rule of either nonreviewability or absolute immunity as to all injuries arising out of military service would open the door to a range of unredressable wrongs bounded only by the limits of one's imagination. Conversely, too assertive a judicial role would potentially implicate many of the legitimate policy considerations examined in this opinion. The intermediate course we adopt today is designed to enable the district courts to balance the concerns discussed above under the circumstances of the cases before them.

■ In the present case, the plaintiffs allege racial discrimination in duty assignments, selection of personnel for training programs, performance evaluations, and level of punishment for minor offenses. Those allegations, if true, would constitute a denial of equal protection. Plaintiffs thus allege a "recognized" constitutional violation, rather than a traditional state law claim couched in constitutional rhetoric.

Plaintiffs have also alleged exhaustion of administrative remedies.[11] This being the case, the district court on remand must consider the four *Mindes* factors bearing on reviewability. The district court must exercise its discretion in balancing these factors, and we express no view as to what the outcome should be. If the claims are found reviewable, the defendants will possess qualified immunity from liability for money damages. The plaintiffs will of course have to demonstrate exhaustion of administrative remedies before actually going to trial. Summary judgment might be appropriate if the plaintiffs are unable to demonstrate exhaustion.

The judgment of the district court is reversed, and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

11. Two principal intraservice remedies are available here. The first, provided by 10 U.S.C. § 938 (1976), authorizes a complaint to any superior commissioned officer. Art. 138, in particular, provides:

> Complaints of Wrongs. Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint . . . .

Second, OPNAV Instructions 5354.1a (1978) (United States Navy Equal Opportunity Manual), prohibits racial, ethnic, cultural, or sexual bias in the administration of justice, work assignments, career planning, off-base housing and the like and establishes a comprehensive procedure for reporting incidents and processing complaints. As indicated earlier, *see* note 2 *supra*, the present state of the record does not permit summary judgment on exhaustion grounds. On remand the court is free to invite submission of further evidence on this issue.