Debra TUFTS, Plaintiff,

v.

Ronald J. BISHOP, et al., Defendants.

No. 80–1890.

United States District Court,
D. Kansas.

Dec. 6, 1982.

---

Mark F. Anderson, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This matter is before the Court on defendants' motion to dismiss pursuant to F.R.Civ.P. 12(c). Plaintiff, Debra Tufts, formerly was an active member of the United States Air Force stationed at McConnell Air Force Base in Wichita, Kansas. She alleges she was a victim of sexual discrimination committed by the various defendants, who were her superior officers at McConnell. According to plaintiff's complaint, defendants include the missile wing commander, the vice commander of the missile wing and wing inspector general, the commander of a combat support group, and a staff judge advocate at McConnell. Plaintiff states she made a formal complaint of sexual discrimination by her immediate supervisor, Second Lieutenant Phillip P. Rios, and that in violation of Air Force and Department of Defense regulations and directions the above defendants quashed the Air Force investigation of her administrative complaint. Briefly, plaintiff alleges Rios told her women did not belong in the military; denied her leave for medical appointments while allowing her male counterparts time off for haircuts and the World Series; and openly flaunted his relationship with his female civilian secretary. The Base Social Action Office initially found evidence supporting plaintiff's claim, but the defendants suddenly quashed the investigation after complaints were made to the base commander regarding the investigation's ramifications.

As a consequence of defendants' actions, plaintiff claims she was denied equal protection and due process of law in violation of the United States Constitution and 42

U.S.C. §§ 1985(3)[1] and 1986.[2] The Court has reviewed defendants' brief and plaintiff's response thereto, and after careful consideration the Court finds defendants' motion must be denied.

## I.  Jurisdiction

██ Defendants do not raise a jurisdictional argument, nor does it appear to be a serious issue. Plaintiff's complaint alleges ·violations of the United States Constitution as well as federal statutes, and consequently the requirements of 28 U.S.C. § 1331 are sufficed. Various circuit courts of appeal have held federal jurisdiction exists for a plaintiff contending the military unlawfully failed to follow its own regulations. *See, e.g., Woodard v. Marsh,* 658 F.2d 989 (5th Cir.1981); *Taylor v. Jones,* 653 F.2d 1193 (8th Cir.1981); *Dillard v. Brown,* 652 F.2d 316, 319 (3d Cir.1981); *Dilley v. Alexander,* 603 F.2d 914 (D.C.Cir.1979); *Crawford v. Cushman,* 531 F.2d 1114, 1120 (2d Cir. 1976); *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971).

In a recent case the Tenth Circuit considered a former servicewoman's suit alleging certain Army National Guard regulations were sexually discriminatory. *Lindenau v. Alexander,* 663 F.2d 68 (10th Cir. 1981). Neither party raised the issue of subject matter jurisdiction, and the Court passed over this threshold question and decided the case on the question of justiciability. Since defendants have not raised an argument regarding subject matter jurisdiction, and the clear weight of authority in similar cases supports a finding of subject matter jurisdiction, the Court finds it has jurisdiction to hear plaintiff's claims. *See also, Coppedge v. Marsh,* 532 F.Supp. 423 (D.Kan.1982).

## II.  Justiciability

The issue of justiciability is not directly raised by defendants' motion to dismiss, though it is impliedly present. Defendants' first specific argument involving intra-military immunity will be discussed below. The Court must first discuss whether it should intervene to review a dispute between a member of the military and her superiors.

Traditionally, the federal courts have been hesitant to review military affairs. *Lindenau v. Alexander,* 663 F.2d at 70. In this case, the Tenth Circuit repeated an often quoted statement by Justice Jackson:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCA § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action, and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

---

1.  42 U.S.C. § 1985.

(3) *Depriving persons of rights or privileges.* If two or more persons in any State or Territory conspire, ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

2.  42 U.S.C. § 1986. *Action for neglect to prevent conspiracy* ·

The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). However, the federal courts in certain situations have reviewed internal military affairs. *See, Wallace v. Chappell,* 661 F.2d 729, 731–32 (9th Cir.1981), and cases cited therein.

■ The leading case on the scope of review a federal court can have over military matters, cited with approval by the Tenth Circuit in *Lindenau v. Alexander,* is the Fifth Circuit's decision in *Mindes v. Seaman.* The Fifth Circuit held in this case that internal military matters are not reviewable "... in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intra-service corrective measures." 453 F.2d at 201.

When a plaintiff has met both of these conditions, the Fifth Circuit held the trial court must then weigh four factors to determine whether a particular complaint should be reviewed:

(1) The nature and strength of the plaintiff's claim.

(2) The potential injury to the plaintiff if review is refused.

(3) The type and degree of anticipated interference with military functions.

(4) The extent to which the exercise of military expertise or discretion is involved.

*Id.* at 201–02. In the case at bar, plaintiff has satisfied the first requirement by alleging violations of both the Constitution and military regulations. Plaintiff did not state in her complaint that the exhaustion requirement has been satisfied, though this failure is not fatal for the purposes of defendants' motion, and this point will be discussed further below. Since these two conditions are met, the Court shall now consider the above four factors to determine whether plaintiff's case is reviewable.

Plaintiff's claim is obviously very serious, since she contends defendants knowingly denied her the protection of laws and regulations designed to assist her in the administrative prosecution of her discrimination claim. The potential injury to plaintiff, if review is refused, is great, because plaintiff has no other forum in which to pursue a remedy for denial of her constitutional rights.

The third factor to be considered, anticipated interference with military functions, will always be present when court review is granted. However, plaintiff's case does not appear to present any serious impairment to the performance of vital military duties. Lastly, plaintiff's case does not present a situation where a significant exercise of military expertise or discretion is involved, for the regulations allegedly violated by defendants are clear. Plaintiff's situation is unlike that in *Lindenau v. Alexander,* where the Tenth Circuit found a servicewoman's challenge of enlistment regulations did not present a justiciable issue.[3]

Plaintiff's case somewhat resembles the situation in *Wallace v. Chappell.* Here plaintiffs were several black Navy enlisted men who claimed they were harassed and discriminated against by superior officers

---

**3.** In *Lindenau v. Alexander* a divorced mother with custody of her two children enlisted in the National Guard. Child care was arranged with her parents. After being honorably discharged, she sued to challenge the constitutionality of an Army National Guard enlistment regulation disqualifying any "applicant without a spouse and with one or more dependents under 18 years of age." The Tenth Circuit applied the Fifth Circuit's analysis from *Mindes v. Seaman*

and determined plaintiff had properly alleged exhaustion and ·constitutional violations. Nevertheless, the Tenth Circuit agreed with the trial court's decision that plaintiff's alleged constitutional deprivations were not strong, for the regulation was facially neutral and had a rational basis. Consequently, the Tenth Circuit held plaintiff's claim was not justiciable. 663 F.2d at 74.

because of their race. Like plaintiff here, they claimed violations of both the equal protection clause and 42 U.S.C. § 1985(3). The Ninth Circuit found that at least when "recognized" constitutional claims are alleged, the *Mindes* test is appropriate to determine whether a justiciable case is present. 661 F.2d at 734. The Ninth Circuit discussed *Mindes* in detail, and it noted plaintiffs' claims of racial discrimination would constitute equal protection violations if proven. *Id.* at 737. The case was remanded to the trial court for further consideration.[4]

█ In conclusion, the Court agrees with the policy considerations discussed by the Ninth Circuit in *Wallace v. Chappell:*

A ruling barring judicial review or establishing absolute immunity is an extreme measure. In the present context, either type of rule would shield from responsibility even an official who knowingly and in bad faith violates an individual's constitutional rights. So drastic a ruling could be justified only by policy concerns of extraordinary magnitude.

\*       \*       \*       \*       \*       \*

To adopt a per se rule of either nonreviewability or absolute immunity as to all injuries arising out of military service would open the door to a range of unredressable wrongs bounded only by the limits of one's imagination.

661 F.2d at 737. After carefully weighing the four factors set forth in *Mindes v. Seaman,* the Court finds plaintiff's complaint is appropriate for judicial consideration. The Court will now proceed to the particular arguments concerning justiciability raised in defendants' motion.

*A. Intra-Military Immunity and the Feres Doctrine*

█ Defendants contend the doctrine of intra-military immunity established in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), should apply here. In this case, the United States was

sued for negligence causing death or injury to three military servicemen. The Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. However, defendants' contention that *Feres* applies as well to violations of constitutional rights of service personnel has been rejected. *Wallace v. Chappell,* 661 F.2d at 735. Here the Ninth Circuit carefully analyzed the Supreme Court's reasoning in *Feres* and explained why it was not applicable to constitutional violations:

The rationales advanced by *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), construing the Federal Tort Claims Act to bar liability of the United States for certain actions incident to military service, either are inapplicable here or have already been considered. First, the *Feres* Court believed it unfair to subject members of the armed services to varying standards of liability depending on the law of the place where they are stationed. 340 U.S. at 142–43, 71 S.Ct. at 157–158. This "non-uniformity" rationale is inapplicable to claims based on the Constitution. Second, the *Feres* Court noted that the United States is liable under the FTCA in the same manner that a private individual would be liable under the circumstances. Because military activities lack private counterparts, the Court concluded that Congress could not have contemplated recovery for claims arising out of military service. *Id.* at 141–42, 71 S.Ct. at 156–157. This rationale, of course, is entirely inapplicable to constitutional claims. Third, the Court noted that alternative statutory compensation schemes are available for military personnel receiving physical injuries. *Id.* at 144, 71 S.Ct. at 158. No such statutory compensation is available here. Similarly inapplicable are two of the rationales previously considered in the context of the

---

4. The United States Supreme Court granted certiorari for this case on November 1, 1982.

—— U.S. ——, 103 S.Ct. 292, 74 L.Ed.2d 276.

reviewability question—the possibility that military operations will be disrupted, and the possibility of courts usurping military functions that they lack the competence to perform. Once a claim has been found reviewable, allowing a damages remedy would not exacerbate either the disruption or the usurpation. In each case, the principal disadvantage arises from the litigation itself.

*Id.* at n. 9, p. 736. In addition, plaintiff's complaint does not appear to be an attempt to disguise a common tort as a constitutional violation to skirt the *Feres* Doctrine.

Defendants argue the special nature of military discipline and procedure supports a finding of intra-military immunity, and they cite two Supreme Court cases in support of this proposition. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). *Schlesinger* is completely dissimilar to the case at bar. Here, an army captain sued his superiors to enjoin an impending court martial proceeding against him. The Supreme Court held equitable intervention in the pending court martial proceeding was unjustified, since it must be presumed the military judicial system would vindicate the serviceman's constitutional rights. *Id.,* 420 U.S. at 758, 95 S.Ct. at 1313. Although the Supreme Court noted the military is a peculiar institution distinct from civilian society, and has its own laws and traditions, *id.* at 757, 95 S.Ct. at 1312, the effect of this case must be limited to situations where service personnel are challenging the military court system. By contrast, the plaintiff in the case at bar was not a participant in the military justice system, but merely was trying to pursue an administrative remedy when the alleged constitutional violations occurred. *Parker* also involves an army officer's challenge of the military justice system, and it is likewise inapplicable to plaintiff's case here.

*B. Exhaustion of Administrative Remedies*

Defendants contend plaintiff's complaint does not state she has exhausted all availa-

ble administrative remedies. Plaintiff concedes this point, and in her responsive brief moved to amend her complaint to allege exhaustion. The Court finds justice requires plaintiff be given leave to make such an amendment, and consequently plaintiff's motion is granted pursuant to F.R.Civ.P. 15(a). Defendants' arguments regarding exhaustion are therefore moot.

Furthermore, the parties, in discussing this issue, have referred to facts outside the pleadings, and thus this part of defendants' motion should properly be considered as one for summary judgment pursuant to F.R.Civ.P. 56. Since the facts involving the exhaustion requirement appear controverted, summary judgment would be improper here. The Court notes plaintiff alleges facts in her responsive brief which indicate she complied with the administrative requirements set forth in 10 U.S.C. § 938. This section states that a member of the military who believes he or she was treated unfairly must report the complaint to any superior commissioned officer, who then must pass it on to the proper administrative personnel so that an investigation can be made. Plaintiff alleges that she made several complaints to superior commissioned officers, and that her administrative case was abruptly quashed before completion. However, this is a question of fact to be established after further proceedings.

*C. Failure to State a Claim Upon Which Relief May Be Granted*

Defendants' final argument is that plaintiff has not alleged sufficient facts to support a conspiracy claim under 42 U.S.C. § 1985(3), and that plaintiff did not allege defendants were motivated by an "invidiously discriminatory animus." The Supreme Court has stated that a plaintiff must meet four requirements to state a cause of action under Section 1985(3):

To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class

of persons of equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or cause to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4)(a) 'injured in his person or property,' or (4)(b) 'deprived of having and exercising any right or privilege of a citizen of the United States.' *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *See, Holmes v. Finney,* 631 F.2d 150 (10th Cir.1980).

In order to prove the second element above, a plaintiff must prove a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. at 102, 91 S.Ct. at 1798. *See, Fisher v. Shamburg,* 624 F.2d 156, 158 (10th Cir.1980). Although plaintiff must in acceptable form plead the above four requirements to set forth a § 1985(3) claim, there is no requirement that plaintiff also allege "an invidiously discriminatory animus," although this must be proved if plaintiff is to prevail. Consequently, this contention by defendants lacks merit.

Lastly, plaintiff does set forth ample factual allegations supporting her § 1985(3) conspiracy claim. Her complaint contains over three and a half pages of specific factual allegations involving each of the defendants. The complaint further states these factual allegations involved equal protection violations and are the basis of the alleged conspiracy. We must find that plaintiff's complaint properly states a cause of action upon which relief may be granted.

IT IS, THEREFORE, ORDERED that defendants' motion to dismiss (Dkt. No. 17) must be denied.