Alonzo JONES, et al.,
Plaintiffs-Appellants,

v.

Ronald REAGAN, et al.,
Defendants-Appellees.

No. 81–2918.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1982.

Decided Jan. 4, 1983.

Rehearing and Rehearing En Banc
Denied April 1, 1983.

Thomas M. Joyce, Ltd. Chicago, Ill., for plaintiffs-appellants.

Kevin J. Egan, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before BAUER and POSNER, Circuit Judges, and WISDOM,* Senior Circuit Judge.

POSNER, Circuit Judge.

This is an appeal from the dismissal for failure to state a claim upon which relief can be granted, see Fed.R.Civ.P. 12(b)(6), of a complaint alleging that the plaintiffs, black noncommissioned officers in the United States Army Reserve, were transferred from the unit to which they belonged in a Chicago suburb to other units in the Chicago area solely because they are black and the officer commanding the unit wanted it to be all white. The defendants are, this officer and his superiors in the chain of command up to and including the President of the United States. Their conduct is alleged to violate the due process clause of the Fifth Amendment. They are being sued in their individual rather than official capacities, and damages are sought; at oral argument, the plaintiffs' counsel indicated that the plaintiffs were abandoning any claim for injunctive relief. The district court dismissed the complaint on the ground that the defendants have absolute immunity from tort liability for their al-

leged wrongdoing. The defendants defend the dismissal on this and other grounds, one of which is that the Fifth Amendment does not give rise to an action for damages in a case of this sort.

Although the Fifth Amendment has no equal protection clause, it has been held to forbid racial discrimination by the federal government to the same extent that the Fourteenth Amendment forbids racial discrimination by state governments. See *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). So if the allegations of the complaint are true, as we must assume they are for purposes of deciding this appeal, the defendants have violated the plaintiffs' rights under the Fifth Amendment. But it does not follow that they have a federal damages remedy. No statute creates a remedy applicable to this case and the Fifth Amendment does not indicate what remedies the federal courts should provide for violations of due process of law. However, in *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court held that at least some violations of the Fifth Amendment's due process clause may be redressed by damages actions in federal courts; we have to consider whether the violation alleged in this case is one of them.

The Court spoke of "implying" a right of action in damages from the Fifth Amendment, *id.* at 230, 99 S.Ct. at 2269, but the task is not really one of teasing out the implications of the Fifth Amendment; it is the more creative one of deciding whether a damages remedy is a good way of enforcing the Fifth Amendment, and, if the court decides it is, of creating that remedy as a matter of federal common law. The Court thought it a good method of enforcement in the circumstances of the *Davis* case. Miss Davis had been a deputy administrative assistant to a Congressman. He had fired her, allegedly because she was a woman. The Court said that "relief in damages would be judicially manageable, for the case presents a focused remedial issue without difficult questions of valuation or causation," and that "since respondent is no longer a Congressman ... equitable relief in the form of reinstatement would be unavailing. And there are available no other forms of judicial relief." 442 U.S. at 245, 99 S.Ct. at 2277. Thus, the Court compared a damages suit with other methods of enforcing Miss Davis's rights under the Fifth Amendment and found that the damage remedy was the best, and indeed only, remedy for the violation that she had alleged. In a later decision the Supreme Court created in effect a presumption in favor of implied rights of action under the Constitution, but a presumption that could be rebutted by a showing of " 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). See *Sonntag v. Dooley,* 650 F.2d 904, 907 (7th Cir.1981), for the application of this approach in a Fifth Amendment due process case. Presumably one such "special factor" would be that a damages remedy was inappropriate in the particular circumstances of the case.

A suit for damages is a natural remedy for conduct that causes an injury on which a judge or jury can put a price tag. Miss Davis lost her job. The termination of an employment contract is a familiar source of damages in breach of contract suits. Damages are measured by the difference between the wages fixed in the contract and the wages in whatever job the employee found after being fired. If it is a tort suit and the employee has suffered humiliation or other intangible damages as well as lost wages, these can be estimated, even though only roughly, and added to the damages award. But the conduct complained of in this case is not the firing of anyone but simply a transfer of reservists from one unit in the Chicago area to other units in the same area. No one suffered demotion, or a reduction in pay, benefits, or work amenities, or even an adverse notation entered on his personnel records. No one was discharged, called to active duty, shipped overseas, or even transferred to another city or state. The plaintiffs' counsel acknowledged at the oral argument that these

purely local, purely lateral transfers had not even caused his clients any inconvenience. And since he described the suit as one purely for punitive damages, the plaintiffs must not have suffered any emotional distress either, notwithstanding the alleged racial motivation for the transfers; for proof of humiliation or other emotional distress would justify awarding compensatory damages under tort principles. See, e.g., *Contreras v. Crown Zellerbach Corp.*, 88 Wash.2d 735, 565 P.2d 1173 (1973).

The traditional, though no longer universal, tort rule is that punitive damages will not be awarded unless the plaintiff is awarded some compensatory damages. See *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir.1982). And it is fundamental that a plaintiff who does not even allege a legally cognizable injury cannot obtain a tort judgment. *Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Corp.*, 325 F.2d 2, 14 (3d Cir.1963); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.1982). Thus, someone who read a newspaper account of the transfers of these plaintiffs could not sue the defendants for punitive damages; he would not have sustained a legally cognizable injury. Apparently these plaintiffs likewise suffered no injury that a court of law would take cognizance of, since as we have said their counsel does not intend to ask for compensatory damages.

Now it is true that tort law, including the law of constitutional torts, has a deterrent as well as a compensatory function. See *Carlson v. Green, supra*, 446 U.S. at 21, 100 S.Ct. at 1473. Indeed, it has long been one view that deterrence, accomplished through the setting of standards of conduct and the punishment by means of damage awards, compensatory and punitive, of those who deviate from them, is the main function of tort law. It was the implicit view of Holmes. See Holmes, The Common Law 94–96 (1881); see also Schofield, *Davis v. Mann: Theory of Contributory Negligence*, 3 Harv.L.Rev. 263 (1890). Even if the plaintiffs in this case have not been injured, not measurably anyway, allowing them to bring actions for punitive damages would deter violations of the Constitution; and it can be argued that there is a social interest in such deterrence even if the particular violations do not give rise to damages that a court could measure.

This thinking has never carried the day in conventional tort law; the requirement of proving actual injury as a predicate for seeking punitive damages has been adhered to steadfastly. Maybe a different approach is warranted in constitutional cases, though it is noteworthy that the Supreme Court has been unwilling to allow "general" damages, that is, damages not based on a proven injury, to be awarded in damage actions under 42 U.S.C. § 1983 alleging violations of procedural rights under the due process clause of the Fourteenth Amendment. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). But in any event, if considerations of deterrence are to be brought to center stage, the potential for overdeterrence must also be considered, and it seems to be significant in the present case. Except for the President, the defendants are military officers, active or reserve. Few if any of them can be wealthy yet they are being sued in their individual capacities, which means that although the government will pay for their legal expenses they will be personally liable for any damages assessed against them. We are told that the government will not indemnify them and that no liability insurance policy is offered that would cover suits of this sort. The plaintiffs are asking for damages in excess of $400,000, and if the traditional common law rule of no contribution among tortfeasors were followed (an undecided question, so far as we are able to determine), the plaintiffs (if they won) could levy execution of the entire judgment against one defendant.

We must consider the probable impact of making a military officer liable in damages in these circumstances if he is found to have transferred a subordinate in violation of the due process clause of the Fifth Amendment. Of course it will make officers less likely to make racially discriminatory transfers.

But it will also make them less likely to transfer on nonracial grounds anyone who is of a different race from their own. Such a transfer might give rise to a lawsuit which the officer might lose even though he was not in fact guilty of discrimination. The courts are not infallible, and they do not give defendants in civil suits the same protections against erroneous judgments that they give criminal defendants.

◼ Considerations such as these are often brought up in deciding whether and how much immunity from suit to give government officers. See, e.g., *Butz v. Economou,* 438 U.S. 478, 505–16, 98 S.Ct. 2894, 2910–2915, 57 L.Ed.2d 895 (1978). But a prior question in this case is whether damage suits are an appropriate method of enforcing constitutional rights that may be violated by local transfers of reserve military personnel. If they are not, nothing in *Davis v. Passman* or *Carlson v. Green* compels us to allow this suit to go forward. We think they are not, at least in a case such as this where there is no suggestion of significant actual harm. The compensatory purpose of damage liability is not served when there are no actual damages and the deterrent purpose is ill served when damages actions are likely to overdeter—to make a military commander timid about transferring a subordinate who happens not to be of the same race.

There is no need for us to canvass the larger issues raised by cases such as *Wallace v. Chappell,* 661 F.2d 729 (9th Cir.1981), in which the Supreme Court has granted certiorari, ── U.S. ──, 103 S.Ct. 292, 74 L.Ed.2d 276 (1982). In *Wallace,* a damage suit by several navy enlisted men against their superiors, the alleged racial discrimination took the form of punishing the plaintiffs with unusual severity for minor infractions, and in this and other ways retarding their military careers. Such injuries are measurable by the usual tort methods. There is still a problem of overdeterrence and it may lead the Supreme Court to decide that there should be no damage liability even in such cases, or, what amounts to virtually the same thing, that the defend-

ants should have absolute immunity from suit. But we need not go that far in this case. It is enough for us to hold that damage remedies for constitutional torts are not appropriate and hence not available, unless expressly authorized by Congress, if no monetizable injury is alleged. Tort, we have said, presupposes injury. If any actual injury is alleged here—which is doubtful in light of the statements made by the plaintiffs' counsel at the oral argument—apparently it is too trivial to be measurable in damages; and "even in the field of constitutional torts *de minimis non curat lex."* *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982). There is, we conclude, no federal damage remedy for the violation that these plaintiffs allege. This does not mean that the military is "above the Constitution." It just means that in the circumstances of this case these plaintiffs have no damages remedy in federal court against their military superiors.

AFFIRMED.